Bruen *v.* Hone.

## SAME TERM. *Before the same Justice.*

## BRUEN *vs.* HONE and others.

Upon an application to open a stated account, the plaintiff must either charge fraud, or specify particular errors.

If fraud is proved, it will be a sufficient ground to open the whole account. Otherwise, where errors or mistakes, only, are shown to exist, in the account. In that case the account will not be opened, but the party will merely be permitted to surcharge and falsify it.

A surcharge is appropriately applied to the balance of the whole account, and supposes credits to be omitted which ought to be allowed. Falsification applies to some item of the debits, supposing it to be wholly false, or in part erroneous.

The effect of surcharging and falsifying is to leave the account in full force and vigor as a stated account, except so far as it can be impugned by the opposing party.

Where a bill filed to open an account is founded on specific charges, and where neither the answer nor the proofs warrant an inquiry beyond those special matters, the proper course is to open to contestation only the items which are set forth in the bill as being erroneous or unjustifiable, and to treat the account in all other respects as conclusive.

It is not necessary that an account should be signed by the parties, to make it a stated account. It is enough that it has been examined, and accepted, by the parties. And such acceptance need not be express. It may be implied from circumstances.

Between merchants, an account which has been presented, and no objection made thereto within a reasonable time, is treated, under ordinary circumstances, as being, by acquiescence, a stated account; and if the balance is paid it becomes a settled account.

It is an objection to opening a stated and settled account, that since the rendering of his account by the defendant his books have been destroyed by fire, and there-

---

Bruen *v.* Hone.

---

fore cannot be referred to; especially if the plaintiff omits to produce his own books, or vouchers, or the account rendered by the defendant.

It is another objection to opening a settled account that the party has been guilty of negligence and laches in detecting the alleged errors therein. So held, where a party had suffered ten years to elapse, before filing his bill.

Where the demand is of a legal character, and is cognizable at law, courts of equity are governed by the same length of time which is prescribed by the statute of limitations in regard to suits in courts of common law.

Where the demand is of an equitable nature, courts of equity are governed by another rule, viz. not to entertain stale or antiquated demands, and not to encourage laches and negligence.

He who seeks equity, must do equity. Upon this principle, if a party is unable to restore the benefits he has received under an agreement, he has no right to ask to be released from its obligations.

Where a matter has been twice adjudicated upon by competent tribunals, it is too late for a party to apply to have a re-examination of it, unless fraud be established, or mistake be shown which he did not know and could not have guarded against, at the proper time.

A judgment of a court of competent jurisdiction is final, not only as to the matter, actually determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided.

IN EQUITY. In 1827, Geo. W. Bruen formed a *copartnership* with Thomas H. Smith, under the firm of T. H. Smith & Son, which continued until the death of Smith in Sept. 1829. T. H. Smith & Son were extensively engaged in importing teas and silks from China, and made an agreement with the firm of John Hone & Sons, auctioneers and commission merchants, to sell for them the goods which they might import, for certain commissions agreed upon. It was alleged in the bill, that in case of any advances by J. Hone & Sons of money or paper, no guarantee commissions on the sales of teas should be charged, but in lieu thereof one per cent for advances. Pursuant thereto, large sales were made by J. Hone & Sons, and large advances made to T. H. Smith & Son, amounting to about $2,400,000. J. Hone & Sons rendered to the plaintiff an account of their dealings, to which the plaintiff made sundry objections: (1.) To guarantee commissions, amounting to $20,003,88, charged on sales prior to April, 1828; (2.) To guarantee commissions subsequent to that date, amounting to $23,762,03; (3.) To the commission of one per cent, charged at $10,530, on certain specified advances;

(4.) To certain notes of T. H. Smith & Son, paid, as was said, without authority, at Boston, amounting to $20,941,96.

After sundry negotiations, it was finally agreed between the plaintiff and Isaac S. Hone, one of the defendants, that the plaintiff should pay to J. Hone & Sons $200,000, in compromise and settlement of the balance claimed by J. Hone & Sons, which was $164,478,66, besides large arrears of interest. The plaintiff confessed a judgment for $200,000, on which, in Feb. 1837, he paid in cash $50,000, and delivered certain mortgages and other securities, in full satisfaction of the judgment. The plaintiff alleged in his bill that after such compromise and payment, he discovered two errors in the account, one of a charge on the 9th of May, 1829, of $30,000 on account of a note in favor of T. H. Smith and Son, and the other of three several sums amounting to $15,000, paid Matthias Bruen on the 11th of January, 1830. The errors were alleged to consist in this; that the $30,000 note was discounted for John Hone & Sons, and the avails paid to them, and therefore was not chargeable to T. H. Smith & Son ; and that the $15,000 was payment to, and not by, John Hone & Son, and ought therefore to have been credited to, not charged against, the firm of T. H. Smith & Son.

The defendants in their answer denied that they agreed to charge one per cent on advances, and not a guarantee commission ; and they set out a letter to them from T. H. Smith & Son, under date of 16th April, 1828, agreeing to pay 2½ per cent commission on all the notes taken for sales of teas, as well as for the silks. They averred that at that time no avails of sales made for T. H. Smith & Son had been received, but J. Hone & Sons were in advance over $717,000, and that this agreement was intended to cover those advances, as well as future sales. That a final account was rendered in 1832, instead of 1835, as claimed by the plaintiff; and that prior to that time sketch accounts containing all the transactions between the parties had been from time to time rendered to the plaintiff. They denied that the account annexed to the bill of complaint was the final account thus rendered and on which the parties settled, but insisted that it was a bill of particulars furnished in

a suit at law, which they brought against the plaintiff as surviving partner of T. H. Smith & Son, and in which suit they counted on 23 promissory notes, and generally for money lent, money paid, &c. laying their damages at $350,000 ; and the answer averred that that suit was for the identical matters in controversy in this suit. Bruen, in that suit, pleaded a set-off; from which however he was precluded by an order of the court of law, because of his refusal to furnish the particulars thereof, so that the suit at law stood on the accuracy of Hone & Sons' demand alone. The issue at law was referred, and Bruen was notified to produce before the referees his books of account, and all accounts rendered by Hone & Sons. Omitting to do so, Bruen was ordered, on a petition for a discovery under the statute, to produce the same within a certain time ; which he failed to do. That cause being ready for trial and the referees having met, the counsel for Bruen proposed a compromise for $200,000, which was acceded to by the defendants, though that sum was considerably below the amount they claimed ; mainly because of the insolvency of the firm of T. H. Smith & Son. Whereupon the referees were instructed by Bruen's counsel to report that sum against him, which they did, and judgment was entered thereon, on the 23d of May, 1836.

The claim of John Hone & Sons against T. H. Smith & Son had been secured by a deed of trust from T. H. Smith & Son to Anthon, one of the defendants in this suit, on which, as trustee of Hone & Son, he filed a bill in May, 1836, against Bruen, setting forth, *inter alia*, the before mentioned transactions, the indebtedness of T. H. Smith & Son, and the recovery of said judgment, and praying that the trust might be enforced. To that bill Bruen put in an answer admitting its allegations, and setting up a claim to be allowed as payment on said judgment, the amount of certain bank shares which he had pledged as security. A final decree was entered, allowing him $32,108,46 on that account, and directing the sale of the trust property for the balance of the judgment. A sale accordingly took place, and the property was bought by one Thorn, for Bruen, and in February, 1837, Bruen satisfied the judgment by paying

Bruen *v.* Hone.

$50,000 in cash, and giving his own bond and Thorn's, with a mortgage on certain real estate for the balance. In August, 1837, a bill was filed against Bruen and others, to foreclose that mortgage, a decree obtained, and a sale of the mortgaged premises had. In May, 1839, Bruen applied to the court of law and obtained there an order directing satisfaction to be entered on the judgment for $200,000.

The defendants in their answer in this suit, averred that prior to August, 1837, Bruen claimed that there were errors in the account rendered by Hone & Sons, but did not specify what they were; and that prior to May, 1839, he claimed that the error amounted to $60,000, and the defendants insisted that the judgment at law, and the decrees in equity, with the proceedings thereon above set forth, form a bar to the bill of complaint in this suit.

The defendants denied that the $30,000 note was an error in the account, and admitted that the $15,000 ought to have been credited and not debited to J. Hone & Sons; that in that respect, the bill of particulars was erroneous, but they did not admit that the account rendered to them contained such error, and they claimed that at the time of the rendition of the judgment, there was at least $236,000 due to them from T. H. Smith & Son, over and above that sum of $15,000.

Depositions were taken in the case; among others that of J. P. Hall, who was Bruen's counsel in the suit at law. He showed that the bill of particulars had been examined by him and by Bruen, preparatory to the hearing before the referees, and many items of it objected to, or questioned. In answer to a question relative to the basis on which the referees were directed to report, he said that it was not assumed that the bill of particulars, in the items not thus objected to or questioned, was correct, but it was assumed by him and Bruen that the amount due from T. H. Smith & Son to J. Hone & Sons was at least $200,000, and on that basis the report was made. He also stated that before that arrangement was made he had consulted Roberts, who had been the principal clerk of T. H. Smith & Son, and who knew more about the accounts than any

Bruen v. Hone.

other person, and had been informed by Roberts that neither the bill of particulars nor the books of T. H. Smith & Son were correct, but that the real balance between the parties did not differ much from the sum claimed in the bill of particulars; which he communicated to Bruen, and he acted under the express authority of Bruen in offering the compromise of $200,000. And he urged upon Hone & Sons the propriety of accepting his proposition; because he could defend the suit at law as long as the Trojan war, and because the security they had was quite doubtful. And he proposed to admit that $200,000 was due, on condition that Hone & Sons should not claim a larger sum. He also stated that before he made application to the court to have satisfaction entered upon the judgment, he had applied for that purpose to the attorney of J. Hone & Sons, who had declined because, as he said, Bruen claimed that there was a mistake in the accounts of $60,000. He farther stated that the advantage secured to Bruen by the arrangement he made with Hone & Sons, in giving them a judgment for $200,000, was that Bruen obtained 136 of the 240 lots of land held by Anthon in trust, free from all incumbrances, and he availed himself of them for his own purposes.

It also appeared in evidence that on the 7th of March, 1829, (the day on which the $30,000 note bears date,) a check of T. H. Smith & Son for $29,685 in favor of Hone & Sons was passed to the credit of Hone & Sons, and used by them; that the $30,000 note was discounted by the bank for account of T. H. Smith & Son, and the proceeds, $29,685, placed to their credit.

It was admitted that the defendants knew nothing of the alleged errors until after the judgment at law had been obtained and had been paid. And it was proved that the accounts between the parties, as they appeared on the bill of particulars, with interest added, and making no allowance for errors, would have shown a balance against T. H. Smith & Son on the day the referees made their report, of $306,399,92, and on making all due allowance for those alleged errors, of considerably over $200,000.

Bruen *v.* Hone.

*N. Dane Ellingwood,* for the plaintiff.

*M. Hoffman & D. Lord,* for the defendants.

EDMONDS, J.   This being an application to open a stated account, the plaintiff must either charge fraud or specify particular errors.   When fraud is proved, it will be a sufficient ground to open the whole account; but the case is different where errors or mistakes only are shown to exist in the account.   For there the account will not be opened, but the party will merely be permitted to surcharge and falsify it.   (2 *Dan. Pr.* 764, *and cases there cited.*)   The bill, in this case, has the double aspect, and charges fraud and error, specifying it.   The fraud is not proved.   The allegation of the bill in this respect is, that the defendants knew of the alleged errors, before the settlement, and concealed the same from the plaintiff. Of this there is no evidence in the case, but there is an admission that the defendants did not know of them, or have any information in regard to them until after the compromise had been made, and the judgment had been obtained and paid. There is no ground, therefore, for opening the whole account. And the only question is, whether the plaintiff shall be allowed to surcharge and falsify it.   A surcharge is appropriately applied to the balance of the whole account, and supposes credits to be omitted which ought to be allowed; and falsification applies to some item of the debits, supposing it to be wholly false, or in part erroneous.   (1 *Story's Eq. Jur.* § 525.)   The effect of surcharging and falsifying is, to leave the account in full force and vigor, as a stated account, except so far as it can be impugned by the opposing party.   (*Pitt v. Cholmondely,* 2 *Ves. sen.* 565.   *Perkins v. Hart,* 11 *Wheat.* 237.   *Story's Eq. Pl.* §§ 801, 802.   1 *Story's Eq. Jur.* § 523.)   Upon this principle it is manifest that the settlement between these parties ought not to be disturbed; because it is clear that if due allowance were made to the plaintiff for the alleged errors, with interest upon them, there was still a balance due from T. H. Smith & Son to Hone & Sons, at the time the judgment was

rendered, of over $228,000. This is upon the idea that the moderate course would be taken, as is sometimes done, of opening to contestation one or two items only, which are specially set forth in the bill as being erroneous or unjustifiable, and treating the account, in all other respects, as conclusive. This is the course proper to be adopted where, as in this case, the bill is founded on specific charges, and where neither the answer nor the proofs warrant an inquiry beyond those special matters. (*Consequa* v. *Fanning*, 3 *John. Ch. Rep.* 595.) But the plaintiff seeks, by his bill, to go farther than merely to contest the two items of $30,000 and $15,000. He desires to surcharge and falsify generally ; and that upon the allegation that his house was improperly charged with guarantee commissions on the sales of teas. It therefore becomes necessary to look into this further allegation of error, and see whether it affords ground for surcharging and falsifying, or for a mere contestation on that point. It seems to me that it does neither; for the letter of 16th April, 1828, from T. H. Smith & Son, is a distinct agreement that Hone & Sons shall be allowed a guarantee commission of $2\frac{1}{2}$ per cent on all notes taken for the sale of teas. At the time this letter was written, one cargo of teas had been sold at six months' credit, but no proceeds had been realized ; yet Hone & Sons were in advance to Smith & Son over $700,000. All this afforded a sufficient consideration for the agreement to allow guarantee commissions ; and the agreement being so clearly made out, there is in truth no cause whatever for complaining of the charge, or for opening the account, even for a mere contestation of this item.

There being then no charge of fraud in the settlement of the accounts, sustained by the evidence, there is no reason for opening the accounts generally. There being nothing in the evidence to sustain the application for leave to surcharge and falsify, and there being no use in opening to contestation the two specified items, because the balance against T. H. S. & Son would still be greater than the amount of the judgment, the foundation of the bill of complaint, in its character of seeking to open a settled account, entirely fails. It remains to regard

it in its character of seeking to set aside a settlement or com-
promise between the parties.

This is founded, of course, on the idea that this was not a
stated account, but a compromise merely. Now it is not neces-
sary that an account should be signed by the parties to make
it a stated account. It is enough that it has been examined
and accepted by the parties; and this acceptance need not be
express: it may be implied from circumstances. ( *Willis* v.
*Jernegan*, 2 *Atk.* 251.) Between merchants at home an ac-
count which has been presented, and no objection made thereto,
after the lapse of several posts, is treated, under ordinary cir-
cumstances, as being by acquiescence, a stated account. (1
*Story's Eq. Jur.* § 526. *Freeland* v. *Heron*, 7 *Cranch*, 147.
*Philips* v. *Belden*, 2 *Edw. Rep.* 1.) Now in this case it ap-
pears that sketch accounts were rendered from time to time,
and a final account rendered in 1832, yet no fault was found
with it, until after a lapse of 3 or 4 years, when a suit had been
brought upon it, and in that suit there was a final settlement,
and a payment of the amount admitted to be due. The lan-
guage of the vice chancellor, in 2 *Edw.* becomes applicable,
that the party keeping the account by him, and making no ob-
jection within a reasonable time, is considered from his silence
as acquiescing, and is bound by it as a stated account; and if
the balance is paid, it becomes a settled account. It would
seem then that this has all the features of a stated and settled
account, and ought to be regarded in no other light by this
court. (*Ficket* v. *Short*, 2 *Ves. sen.* 239. *Murray* v. *Toland*,
3 *John. Ch. Rep.* 569.) But in whatever aspect the bill is to
be regarded, it seems that there are several insuperable objec-
tions to granting its prayer.

One is that the defendant's books have been destroyed by
fire, and cannot now be produced. The accounts were rendered
when the books were in existence, and the settlement was made
when the transactions were comparatively recent, and when
both parties had the means of arriving at the truth in regard
to them. While the defendants labor under this disadvantage,
the plaintiff omits, in this suit, as he did in the suit at law, to

produce his own books or vouchers, or the accounts rendered to him by J. Hone & Sons, and after a lapse of ten years, relies solely upon an error, which he alleges he has discovered in a bill of particulars.    The equity of the case, from this bare statement of it, is evidently with the defendants.

Another objection to granting the relief asked for is, that the plaintiff has been guilty of negligence in detecting the errors which he alleges he has discovered.    From 1832, when the account was rendered to him, until the filing of this bill in 1843, he had precisely the same opportunity and means of detecting and exposing these alleged errors, that he has at this moment.    It is a most material ground in such cases to ascertain whether the bill is brought to open and correct errors in the account *recenti facto*, or whether the application is made after a great lapse of time.    Where the demand is of a legal nature and might be cognizable at law, (and this is such a case,) courts of equity govern themselves by the same limitations as are prescribed by the statute of limitations in regard to suits in courts of common law.    (1 *Story's Eq. Jur.* § 529.)    And where the demand is of an equitable nature, or the bar of the statute is inapplicable, courts of equity have another rule, and that is not to entertain stale or antiquated demands, and not to encourage laches and negligence.    (*Rayner* v. *Pearsall*, 3 *John. Ch. Rep.* 579.    *Ray* v. *Bogart*, 2 *John. Ca.* 432.    *Mooers* v. *White*, 6 *John. Ch. Rep.* 360.)    And this, from considerations of public policy, from the difficulty of doing entire justice, when the original transactions have become obscure by the lapse of time, and the evidence may be lost, and from the consciousness that the repose of titles, and the security of property, are promoted by a full enforcement of the maxim, *vigilantibus, non dormientibus jura subveniunt.*    (1 *Story's Eq. Pl. supra. Jeremy on Eq. Jur. b.* 3, *p.* 2, *ch.* 5, *p.* 54, § 549.)

If, then, the plaintiff's claim in this suit is a legal demand, enforcible in a court of law, it is barred by the statute of limitations; more than six years having lapsed before this suit was brought.    (*Hovenden* v. *Ld. Annesley*, 2 *Sch. & Lef.* 629.)    If it is an equitable demand, it is barred by reason of its stale-

Bruen *v.* Hone.

ness; on the presumption that a man will naturally enjoy what belongs to him, and therefore from his not having sought relief, that his claim has been satisfied or relinquished; and upon the policy that one shall not, by neglecting to establish his demands, subject another to insuperable difficulties in resisting them. (*Chalmer* v. *Bradley, Jac. & W.* 63. *Hillary* v. *Waller,* 12 *Ves.* 265. *Pickering* v. *Ld. Stanford,* 2 *Ves. jr.* 280. *Jeremy,* 549.) In the language of Ld. Erskine, (13 *Ves.* 397,) human affairs call aloud for such principles in the administration of justice.

There are, however, still farther reasons why the plaintiff's claim ought not to be successful in this case. A leading principle of equity jurisprudence is that he who seeks equity must do equity. By the agreement out of which flowed the judgment against Bruen of $200,000, he received a release of 136 out of 240 lots of land, free from the incumbrance of their being pledged for the payment of the claim of Hone & Sons against the firm of Smith & Son. He does not, in his bill, offer to restore those lots to their former position; nor indeed can he do so; for it appears from the pleadings, that by his assignment to Iddings, the receiver, he has passed away from himself all control over them, if any of them are yet left unsold by him. To grant the prayer of his bill now, would be to secure to him all the benefits of that agreement, yet release him from a very important part of its obligations. (*McDonald* v. *Neilson,* 2 *Cowen,* 139.)

Again; this matter has been twice adjudicated upon by competent tribunals, once in the court of law and once in a court of equity, on the bill filed to enforce the trust for the security of Hone & Sons' claim. And it is too late now for the party to apply to have a re-examination of it, unless fraud be established, or mistake be shown, which the party did not know and could not have guarded against at the proper time. No fraud is shown, nor any mistake which the plaintiff had not the full means of ascertaining and exposing as well before the judgment at law as now. A judgment or decree of a court possessing competent jurisdiction is final not only as to the matter actually

Bruen *v.* Hone.

determined, but as to every other matter which the parties might litigate in the cause, and which they might have had decided. (*Le Guen* v. *Governeur*, 2 *John. Cas.* 492, *2nd ed. and cases cited in note a.*) The reasons in favor of this extent of the rule are founded in the propriety of silencing the contentions of parties, and of accomplishing the ends of justice by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort. And what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims ? The rule requires no more than a reasonable degree of vigilance and attention: a different course might be dangerous and often oppressive. It might tend to unsettle all the determinations of law, and open a door for infinite vexation. (*Per Radcliff, J.* 1 *John. Cas. supra.*) And more than this, that judgment was paid under the compulsion of legal process, and it would tend to encourage the greatest negligence if, after all that, the courts were to open a door to parties to try their causes again because they were not properly prepared the first time. After a recovery by process of law there must be an end of litigation : otherwise there will be no security for any person. (*Per Ld. Kenyon, and Grove, J. Marriot* v. *Hampton,* 7 *T. R.* 269.)

Under this accumulation of principle and authorities, the plaintiff's case must necessarily fall, and his bill be dismissed.

Decree accordingly.