WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SUR-
ROGATE.—June, 1886.

CARMAN *v.* BROWN.

*In the matter of the application for the disposition of the real property of* HARRY BROWN, *deceased, for the payment of his debts.*

Decedent died October 1st, 1868, indebted to C., on simple contract, in the sum of $300, which had become due and payable April 1st, 1868, and leaving a will nominating executors, to whom letters were issued on October 19th of the same year.  In June, 1871, a judgment for the amount of the claim was recovered against the executors, who, in July, 1880, voluntarily rendered their first account, showing an insufficiency of assets to pay alleged debts.  On May, 17th, 1886, C. instituted a special proceeding for the disposition of the real property of decedent, for the payment of his debts.   Upon objection by the devisees,—

*Held,* that C.'s claim was barred by the statute of limitations, his remedy against the real property gone, and that the application should be denied.

Mead v. Jenkins, 95 *N. Y.,* 31—criticised.

*It seems,* that the limitation, contained in Code Civ. Pro., § 2750, of the time within which a creditor may present a petition for the disposition of a decedent's real property for the payment of his debt, to three years after letters are granted,—and the suspension, by id., § 1844, of the right of action therefor against the heirs and devisees during the same three years,—have no such connection as to justify a construction whereby the period of such suspension should be deemed to enlarge that of the limitation mentioned.

Where a testator devises his real property to one for life, with a direction that, after the death of the latter, the same be sold, and the proceeds divided, such property does not constitute legal assets of the estate during the lifetime of the *cestui que vie.*

THE SURROGATE.—Harry Brown died on October 1st, 1868, leaving a will which was admitted to probate on the 19th day of the same month and year. By it, his widow Judith was appointed executrix, and

his sons George and Alfred were appointed executors thereof, all of whom qualified and have acted as such. The testator, among other things, devised his real property, consisting of a dwelling house and several acres of land, to his wife for life, and directed the same, at her death, to be sold, and the proceeds divided among his children, share and share alike. At the time of the testator's death, he was owing a number of debts, among which was one, on simple contract, to Emanuel Carman, of $300, which became due and payable April 1st, 1868 (before his death). In June, 1871, Carman obtained a judgment against the executors for the amount of his claim; interest and costs.

In July, 1880, the executors voluntarily rendered an account of their proceedings for the fast time, from which it appeared that there were not sufficient assets to pay the alleged debts. Whereupon Carman, on May 17th, 1886; presented an application for an order directing the executors to show cause why they should not be compelled to mortgage, lease or sell said real property, which still remained in possession of the widow, for the payment of such debts.

J. LAWTON, *for petitioner:*

Cited Mead v. Jenkins (95 *N. Y.*, 31).

J. FLYNN, *for executors and devisees:*

Objected that the claim was barred by the Statute of Limitations, and cited same case (4 *Redf.*, 369). He also objected that the land was legal assets.

THE SURROGATE.—It may be regarded as quite

anomalous, that a decision of this court should be relied upon as an authority, as against a decision reversing it, by the Court of Appeals. Of course, when that case was reversed by the latter court, on the ground that the claim was not barred by the Statute of Limitations, and was remitted to me with instructions to proceed accordingly, it became my duty to obey. But here, in another case, where the same question, substantially, is again presented, it would be shrinking from the performance of a grave official act, not to follow my own settled conviction upon the question involved, however much it may be in conflict with the opinion of that distinguished and learned appellate court. It cannot be the duty of an inferior tribunal, however humble, to bow with supple subserviency to the hasty and probably ill considered *dictum* of any court, however exalted, against its own matured judgment. I have the utmost respect for the learning, high character and integrity of our court of last resort, but do not regard it as utterly infallible, and believe it would have little respect even for the lowest court which should blindly follow its lead into an untenable position. To err is human, and with the mass of business weighing it down, it is but natural that here and there an error of judgment should be manifested. However lofty or lowly the courts may be, each, in its broader or narrower sphere, must expound and apply the law, on the subjects adjudged, according to its best and most enlightened judgment, for the protection of the rights of people and property, and for guidance for the future. With these preliminary remarks, made

to justify the criticism about to be entered upon, and with the simple but earnest desire to correct what seems to be an erroneous exposition of the law on the subject, I proceed to consider the opinion of the court in 95 N. Y.

It is there admitted that the limitation, within which an action could have been commenced on Mead's demand, was six years, with eighteen months added as against the administrators.   Six years from what time ?   Undoubtedly, from the time when the claim became due and payable; at least, there is a very general impression that such is, and always has been, the law (Code Civ. Pro., § 415).   Nevertheless, the court there says: " the proceedings here could not be commenced until after the accounting, AND HENCE *the statute did not commence to run until the accounting in* 1877; and yet the same court says: " the claim was due Feb. 11th, 1871." We are not told where this new statute of limitations can be found.   Indeed, are there two statutes of limitations of six years for the same claim, one applying to a recovery of it as against personal property, and the other as against realty,—the one to be used as a shield by the administrators, and the other by the heirs at law ?   If so, where are they ?

There are different periods of suspension assigned, but the time of the commencement of running is the same.   Did not the statute commence to run *for all purposes* on the 11th of February, 1871 ?   Eighteen months were added on the death of the debtor.   Is there any statute, anywhere, declaring a suspension of the running of the statute for any other purpose ?

None is found.   The Code of 1848 was in force when the debt became due.   Section 105 of that Code, for which § 406 of the present Code was substituted, speaks only of an "action," and there is no provision of the former, making the limitations of actions applicable to "special proceedings."   That was first done by the Code of 1877, § 414.   Hence, the alleged exception of a statutory stay did not apply to such proceedings until that date.   By § 3356 of the present Code (L. 1877, ch. 318), neither § 406 nor § 414 went into effect until September 1st, 1874.   Hence, if those sections apply at all, such application could not be made until then.   The statute, therefore, commenced to run February 11th, 1871, and, assuming that § 406 has no application, continued to run until the death of the debtor, which occurred about a month later, and then ceased to run until eighteen months after the date of the letters of administration, issued April 14th, 1871, when it again attached, and continued to run until February 6th, 1880, when the proceeding was commenced.   Thus, at that time, after making all deductions, the period that had elapsed from the time the cause of action accrued, was about seven years and six months; in other words, the claim, on the above assumption, had been completely barred one year and six months, before the creditor commenced his proceeding.

As a rule, statutes are only prospective in their operation, unless they be clearly made retrospective. Section 414 did make the statute of limitations retrospective, with certain exceptions, within which the case under consideration, it is contended, is not em-

braced. It cannot, therefore, be denied that § 406 was operative when the proceeding was commenced, and that it applied to such a special proceeding, in so far only, however, as it was pertinent; but the statute, then in force (3 R. S., 5th ed., 196, § 59), which declared that a creditor might take the proceeding, if it appeared, after the rendering of an account, that there was not sufficient personal property to pay the debts, operated no stay of proceedings on the part of the creditor. He was just as much at liberty to take proceedings for an accounting as the administrators were (id., 178, § 57). Nay, it was the initiatory step for him to take, in order to compel a sale of the real estate (Dayton's Surr., 622, 3rd ed.). If he did not take it, it was his own fault, and he cannot be permitted to take advantage of his own neglect in order to avoid the effect of the statute of limitations. Under such circumstances diligence is required of the creditor (Mooers v. White, 6 *Johns. Ch.*, 360, 377). The maxim, *vigilantibus et non dormientibus jura subveniunt,* is as old as the time of BRACTON (Burrill's Law Dict., 592). A party who is entitled to a remedy must be active and vigilant in its prosecution. The maxim has been frequently applied by our courts, under various circumstances (see Bruen v. Hone, 2 *Barb.*, 586; Voorhees v. Seymour, 26 *id.*, 569; Greenleaf v. Mumford, 19 *Abb. Pr.*, 469). In the case at bar, the creditor has suffered ten years to elapse without requiring the executors to account, when he could have done so at any time during at least six years of the period.

Let us illustrate the results to which the *dictum* in

the case of Mead v. Jenkins, to the effect that "the statute did not commence to run until the accounting in 1877," might lead. A person, claiming to be a creditor, presents a claim to the administrators four years after letters were issued, and they reject it on the ground that it has become barred by the statute since they obtained letters. Afterwards they render an account, having cited this creditor, who, having conceded that his claim was barred, does not present it on the accounting, the result of which shows a deficiency of assets to pay the debts. Whereupon the creditor, relying upon the above *dictum*, presents an application to the Surrogate, under § 59 (*supra*), to compel the administrators to sell real estate, to pay his and other debts. Could it be held, the statute being interposed as an objection by an heir, that although the claim was barred when presented to the administrators, yet it was not barred so as to prevent him from maintaining his proceeding, *because* the statute did not commence to run for the purpose of that proceeding until after the accounting? Again, suppose the creditor had brought an action against them, in which they successfully set up the statute in bar of a recovery, and they afterwards, for the first time, rendered an account, could he, thereafter, in face of such an objection, be permitted to maintain such a proceeding as this? And yet, under the doctrine of the Court of Appeals, it would seem that he could. Still again, suppose the administrators of Jenkins never to have rendered any account before February 6th, 1880, when Mead, the creditor, cited them to render an account. Ac-

cording to the cases of Martin v. Gage (9 *N. Y.*, 398) and Clark v. Ford (1 *Abb. Ct. App. Dec.*, 359), the administrators could have interposed the statute of limitations as a bar, and thus have avoided the rendering of an account at all, unless the Surrogate, of his own motion, were to require it; and if he did not, and no account were ever rendered, then the statute, according to the Court of Appeals, would never commence to run, as against a proceeding to sell the real estate, and the creditor could never place himself in a position to recover out of it in such a proceeding.

I cannot believe it to be my duty to follow any exposition of the law of the matter, which would lead to such strange results.

The point on which the case was decided in the Supreme court (27 *Hun*, 570) seems not to have met the approbation of the Court of Appeals. It was there held that the three years, within which a suit could not have been brought against the heirs under 3 R. S., 5th ed., 197, § 53, constituted no part of the period of limitation, within which proceedings to sell, etc., should be instituted. Evidently, the section applies only to the "suit" therein referred to, and has no reference to such a proceeding as this. The 59th section permitted the creditor to make the application to compel a sale as soon as an accounting had been had. If that were completed at the end of nineteen months, the creditor could at once present his application, without waiting for the three years mentioned in § 53 to elapse. That seems perfectly clear. But now, by § 2750 of the Code, the creditor *may*, at any time *within* three years after letters were granted,

present such an application, while by § 1844 he *cannot* maintain an action against the heir or devisee *until* three years shall have elapsed after such grant. Thus there seems to be no connection, in this regard, between the special proceeding and the action.

I may be laboring under a grave error, but I cannot but regard the demand of the claimant in this case as clearly barred by the statute, and therefore his application is denied.

The land is not legal assets, as claimed on behalf of the contestants. It is true that, where lands are directed by a testator to be sold by his executors, ordinarily an equitable conversion of lands into assets is regarded as being effected, dating from his death; but where the sale is directed to be made at a future time, or on the occurrence of a future event, the conversion is not effected until the arrival of the period fixed, or the occurrence of the event. Here the widow is still alive, and there has been no equitable conversion. The property must still be considered as land.

Application denied.