WILLIAM A. LORD, Appellant, *v.* CHARLES SPIELMANN and Others, Respondents.

*Contract — when a person in charge of a department of a firm's business is the master — obligation of the firm to account to him — pleading, surcharging an account.*

Where a firm turns over to a person the conduct, charge and responsibility of a department of its business for a period of three years, to be carried on and managed by him as if it were his own, he being responsible as the purchaser of merchandise (in regard to which the firm stands in the position of guarantor), and being entitled to all the profits of the department, except the stipulated commissions of the firm, represented by a percentage on the net sales of the department, and interest upon money, and being chargeable with the store rent and expenses of the office, and also with one-half of all losses arising from bad debts, the person so placed in charge of the department is the master of the business conducted therein, and does not occupy the relation of servant to the firm, and he is entitled to an account of the business transacted, which right is not lost by the fact that he may have made efforts with reference to some future time, not necessarily during the continuance of the contract, to establish other business arrangements which may involve a loss to the firm of their customers, or because of the fact that he has, during the term of the contract, visited Europe when he considered it necessary to do so.

In surcharging or falsifying an account stated, particular items must be stated in the pleadings.

APPEAL by the plaintiff, William A. Lord, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 19th day of February, 1896, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

*F. E. Barnard,* for the appellant.

*Charles E. Rushmore,* for the respondents.

PATTERSON, J. :

This action was brought for an accounting of certain transactions had between the plaintiff and the defendants under a written contract, dated April 3, 1891, but relating back to the first of January of that year (the terms of which will be more particularly referred to hereafter), and to recover damages for the breach of that contract; to open two accounts stated between the parties of the business carried on under that contract, and for judgment against the defendants for

such amount as might be found due to the plaintiff on an accounting. The theory of the plaintiff is that, under the contract, relations were established between the parties by which the plaintiff became a contractor with the defendants to carry on a business, the virtual ownership of which was in him, but out of the proceeds of which he was under obligation to pay the defendants certain commissions, moneys advanced for merchandise and interest thereon and for expenses. He claims that all the accounts were kept in the books of the defendants; that certain statements of account were rendered by them to him of the condition of the business for the years 1891 and 1892 ; that those accounts were false in many respects; and he seeks, among other things, to have such accounts opened, corrected and restated. By the agreement the arrangement was to continue from the 1st of January, 1891, to the 1st of January, 1894. The plaintiff claims that the defendants wrongfully terminated the contract on the 30th of March, 1893, and prevented him by force from conducting his business after that date ; and he also claims that there is due to him on an accounting large sums of money.

The answer of the defendants is, that the relation established between the parties by the agreement was merely one of employment, by the defendants, of the plaintiff ; that he was subject to their orders and directions ; that the business carried on under the agreement was theirs ; that early in the year 1893 they discovered that the plaintiff was acting perfidiously towards them, and that he had formed the intention of severing his connection with them ; that he was seeking to divert the business from them and to take it over to himself or to rival business houses, and that on the 30th of March, 1893, against the express order and direction of the defendants, he went to Europe and abandoned the business ; that, by reason of this disobedience and disloyalty and the efforts of the plaintiff to undermine the defendants' business, and to acquire it to himself or to transfer it to others for his benefit, he deserted his employment and justified them in dismissing him from their service and refusing either to account to him or pay him anything further under the agreement, or in anywise recognize any obligation on their part to him under the contract. They also set up a counterclaim arising partly out of the balance of account for the year 1892, and partly for moneys advanced in the months of January, February

and March, 1893. On the trial of the cause the court found against the plaintiff, and gave judgment in favor of the defendants for the amount of the counterclaim, and from the judgment entered upon that decision the plaintiff appeals.

It is conceded that the right of the plaintiff to any relief in this action depends primarily upon the ascertainment and definition of the relation existing between him and the defendants under the agreement made between them on the 3d of April, 1891. The Justice at Special Term held that, under the terms of that agreement, the relation constituted between the parties was that of employee and employer; that the intent and purpose of the agreement and its effect were to make the plaintiff the agent or servant of the defendants, whereby he became subject to their orders and was bound to render them obedience. Upon the basis of that relationship existing, the trial Judge also found that it was shown that the plaintiff committed a willful breach of the contract by abandoning his employment, and that by so doing he had deprived himself of the right to any of the relief he sought in this action.

We do not concur in the construction of the contract given by the court below. Taking into consideration all its terms and provisions and construing them in the light of the antecedent relations existing between the parties, the conclusion seems to be inevitable that the business which was to be conducted by the plaintiff on the premises of the defendants was, and was intended to be, essentially his individual matter, the responsibility for the conduct of which was with him, and that proprietorship of that business, under the terms of the contract, was vested in him, if not independently, then only with that subordination which resulted from a retained right of supervision. The business was that of carrying on what was called a department, on the defendants' business premises. All through the contract it is treated and referred to as the plaintiff's department. The arrangement in all its details recognizes the plaintiff as the principal of that department. The contract provides that the compensation of all salesmen and employees in that department is to be charged to the plaintiff; that all traveling expenses of the department, whether in Europe or America, shall be charged to him; that all payments to manufacturers for merchandise and all payments for customs and duties and other expenses in connection with the mer-

chandise and all such legal and other expenses as might be incurred were to be charged to the plaintiff's department; that all sales of merchandise were to be credited to that department; that the plaintiff was to pay to the defendants seven and three-quarters per cent on the net sales of the department, which was to cover the commissions of the defendants and all expenses for store rent, fire insurance, office expenses and charging of merchandise. The plaintiff was also to pay to the defendants interest at the rate of six per cent per annum on goods actually bought and in stock on January 1 and June 1, 1892, and January 1, 1894, thus making it a personal obligation of the plaintiff to the defendants. In the event of bad debts, one-half of the loss was to be charged personally to the plaintiff, and then, after deducting the defendants' commissions, profits of every kind, over and above the different items specified, were to be credited to the plaintiff for his sole use and benefit. It was further agreed that the plaintiff was to make all arrangements for merchandise; that that branch of the business should be conducted on what is called a consignment basis; that the defendants were to pay for the goods, and that all consignments, whether made to the plaintiff or to anybody else for his (plaintiff's) account for foreign manufacturers and consignors, should be considered the property of the defendants, who should be entitled to the posession thereof on its arrival and continuously thereafter, *but as security only* until they were fully paid for all their claims of every nature against Mr. Lord and his department. There is also a provision that Spielmann & Co. should retain all the rights of supervision and control which they have always had in said department. It was further provided that the defendants should advance to the plaintiff for his living and other expenses a certain amount per month while the agreement was in force, all of which was to be charged to his account.

It is entirely plain from the terms of this agreement that the defendants turned over to the plaintiff the conduct, charge and responsibility of this department of business for a period of three years, such business to be carried on and managed by him as if it were his own, they providing for their compensation and profit by the terms above referred to. They installed him in this department, making him the responsible purchaser of merchandise, they stand-

ing in the relation of guarantors. They yielded all right to the profits of the department, except their stipulated commissions and interest upon money. They charged the plaintiff for store rent, for all the expenses of the office; they made him personally responsible for one-half of all losses arising from bad debts; they subjected themselves to the obligation of rendering him accounts, and they agreed to accept from him their compensation in the shape of a commission to be paid by him to them, and the risk of there being any profit of the business was entirely his. How all these conditions are to be construed as compatible with a mere relation of master and servant, it is impossible to understand. There is nothing indicating an intention to hire the plaintiff, and instead of paying him a fixed compensation pay him a proportion of profits. There is nothing that indicates a retention by the defendants of this business as their own by putting the plaintiff only in the position of a manager or administrator, and providing for his compensation in an unusual and complicated way. He was to make out of the business what he could, and in all the dealings to be had under the contract from beginning to end, the plaintiff stands in the position of an independent contractor with them who, out of a business to be conducted by him upon capital and facilities furnished by them, should first pay them interest, then allow them for expenses and rent and insurance, then reimburse capital advanced, and then pay them a fixed percentage, not only nominally but actually, as commissions due to them. If this construction of the contract is the correct one, it is manifest that the action of the court below in dismissing the complaint was erroneous.

The plaintiff was entitled at least to an account for the business of January, February and March, 1893, unless he had deprived himself of that right in some other way than by his refusal to remain in America in 1893. That refusal does not deprive him of the right to an account for those months at least; because, in the relation in which he stood to the business, he was the master of his own movements, not being either servant or employee, and he was entitled to carry on the business of his department in the usual way, making visits to Europe from time to time if considered by him necessary. There is nothing in the case to show that any act of the plaintiff resulted detrimentally to the business of the department,

even if that might be made a pretext for the defendants interfering with the plaintiff and excluding him from the business. It is shown that during the months of January, February and March, 1893, the gross business of the department exceeded very largely its business for any antecedent period of three months during the existence of the contract. The plaintiff had done nothing, so far as now appears, to deprive him of his right to an account for those months. It is not difficult to see what prompted the defendants' action, namely, that the plaintiff was making efforts for some future time, not necessarily during the life of the contract with the defendants, to establish other business arrangements which might involve the loss of their customers. But he had not forfeited his right to any account whatever. So far as his claim to open the accounts for the years 1891 and 1892 is concerned, there was no basis in the proof as made which entitled him to that relief. Those accounts were stated and they were accepted by the plaintiff and the balance agreed to by him and a release under seal was given to the defendants of all further liability to account, and that was done after an inspection and verification of the accounts by the plaintiff. There is a general allegation of fraud in the complaint which would go, if proven, to an impeachment of the whole account, but that allegation was not proven. If mistake were relied upon either to surcharge or falsify with respect to any particular items, those items should have been pointed out in the pleading. (*Liscomb* v. *Agate*, 67 Hun, 388; *Bruen* v. *Hone*, 2 Barb. 586; *Philips* v. *Belden*, 2 Edw. Ch. 1.)

It is unnecessary to make further reference to the merits of the controversy. The plaintiff being entitled to an account at least for the year 1893, or some part of it, the judgment dismissing the complaint was wrong, and of course the counterclaim was not in a position to be passed upon or adjusted.

The judgment must be reversed and a new trial ordered, with costs to appellant to abide the event.

Van Brunt, P. J., O'Brien, Ingraham and McLaughlin, JJ., concurred.

Judgment reversed and new trial ordered, with costs to appellant to abide event.