THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOHN COLLINS, as Executor, etc., of MARIA LOUISA COLLINS, Deceased, Trustee, etc., Respondent, *v.* CHARLES DONOHUE, Impleaded, etc., Appellant.

*Principal and surety — effect of a judgment against the principal, in fixing the liability of the surety — laches — interest, when chargeable on a trust fund — appointment of the beneficiary trustee of the trust.*

There is no fixed or rigid rule which under all circumstances would make a surety bound by an order or judgment against his principal, but the question as to whether or not he is so bound is to be determined by the nature of his obligation, and the language and terms of the bond itself.

On the death, in 1884, of Welcome R. Beebe, who had been appointed in 1865 by an order of the Supreme Court, trustee to receive and hold for the life beneficiary a fund left by will, the court appointed as trustee in his place, the life beneficiary herself, who, having failed to obtain the fund on demand, from the deceased trustee's executors, brought an action against them therefor, and for the accumulated interest thereon, and recovered judgment for the amount of the fund and interest.

Having failed to obtain payment of this judgment, an action was commenced by the new trustee, as such, against the sureties of the deceased trustee, to enforce their liability under a bond which provided as follows: "Now the condition of this obligation is such, that if the above-bounden Welcome R. Beebe shall and will well and faithfully perform and discharge his duties as such trustee as named in said order, then this obligation shall be void, else to be and remain in full force and virtue."

Upon the trial evidence was presented that a check for the amount of the trust fund was delivered to Beebe subsequent to his appointment as trustee, and such evidence, supplemented by the judgment recovered against his executors, was relied upon as establishing the liability of the surety who defended.

*Held,* that neither by the nature of the contract, nor by the express terms of the bond, did the surety obligate himself to be bound by the judgment of the court; and, hence, that, when the attempt was made to charge him, after the death of the principal, with the latter's unfaithfulness, he would not be precluded by a judgment obtained against the representatives of the deceased principal, in an action to which he was not a party, and of which he had no notice ;

That although the judgment was not binding upon the surety, yet as there was evidence presented, showing that the former trustee had received the principal of the fund, and had failed to turn over the same, and had converted it to his own use, that the finding to that effect, was based on sufficient evidence, and nothing to the contrary being shown, it would justify a recovery against the surety for such principal sum.   (VAN BRUNT, P. J., dissenting.)

There was no evidence given that interest on the trust fund had ever been received by the deceased trustee, and it appeared that interest thereon, which might have been demanded by the beneficiary yearly, had never been paid by the trustee to the beneficiary, and no action had been taken to enforce its payment until the action brought against the trustee's representatives after his death, an interval of over nineteen years after his appointment as trustee.

*Held,* that in the absence of evidence that interest was received by the trustee, the surety had a right to invoke the rule that a trustee is not liable to pay interest upon a fund to a greater extent than interest has been received, which rule would prevent the trustee's being chargeable with interest in a case where no interest was obtained by him from the trust fund;

That even if it had been shown that interest had been earned, it could not have been recovered by the present trustee, because it was money that belonged, not to the trustee, but to the beneficiary individually, to whom it should from time to time have been paid; and that as to the beneficiary's right to a recovery, in view of the *laches* appearing, there would be serious question.

It was insisted, on behalf of the surety, that the order of the court making the life beneficiary of the trust fund the trustee thereof, was an absolute nullity.

*Held,* that although the appointment of the beneficiary as trustee would prevent the creation of a valid trust, yet when a valid trust had been created, as in this case, the court would not be justified in holding that in making the appointment to execute the pre-existing trust, the court was without jurisdiction, and that the order itself appointing the life beneficiary trustee, was void, or an absolute nullity, even conceding that the surety had the right to attack the appointment collaterally.   (VAN BRUNT, P. J., dissenting.)

APPEAL by the defendant, Charles Donohue, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 27th day of June, 1892, upon a

decision in favor of the plaintiff, rendered after a trial by the court, without a jury, at the New York Circuit.

The action was commenced in the name of the People of the State of New York, on the relation of Maria Louisa Collins, as trustee, etc. The relator died after the commencement of the action, and John Collins, as executor of Maria Louisa Collins, deceased, was substituted in her place and stead, and the action was continued in his name as relator.

*Abram Kling*, for the appellant.

*A. M. Card*, for the respondent.

O'BRIEN, J.:

This action was brought against the defendant as surety upon a bond dated October 6, 1865, conditioned for the faithful performance and discharge by one Welcome R. Beebe of his duties as trustee in pursuance of an order of the Supreme Court appointing said Beebe trustee to receive and hold for the use and benefit of Maria Louisa Collins a certain fund of money which had been left by her mother by last will and testament. Subsequent to the death of the trustee Beebe, which occurred in 1884, Maria Collins, who was the life beneficiary of the trust fund, upon her application, was appointed trustee, under an order which directed her to apply the use, interest and income of the fund, as directed by her mother's will, to her own use, and the principal to the person or persons to whom the same should be determined to belong. She, having made a demand upon the executors of the former trustee and failing to obtain the fund, commenced an action against such executors, which was referred to a referee, who subsequently reported that said Beebe as trustee was chargeable with the principal and interest upon the fund. Upon such report of the referee a judgment for the sum of $12,357.67 was entered, that being the amount as found by the referee for which said Beebe as trustee was chargeable. Having failed to obtain payment of this judgment or the satisfaction of an execution issued thereon, this action was commenced to enforce the liability of the sureties.

Upon the trial evidence was presented that a check for the amount of the trust fund was delivered to Beebe subsequent to his

appointment as trustee. Such evidence, supplemented by the judgment entered upon the report of the referee, was relied upon as establishing the defendant and appellant's liability. This liability was resisted upon two principal grounds : the first, that the judgment entered against the executors of the trustee, fixing the amount for which the trustee Beebe was chargeable, was not binding upon the surety.

In Black on Judgments (§ 586, p. 698), it is said that " the general tendency of the English and American jurisprudence is to hold, in ordinary cases of suretyship, that a judgment against the principal is not conclusive upon the surety, unless the latter was made a defendant to the action.    *    *    *    On the whole, the best rule which can be deduced from the authorities is that the judgment is conclusive upon the surety only in cases where the principal may be considered as the former's agent in the particular transaction, and where, upon a fair construction of the contract of indemnity, it may be construed as binding the surety to a responsibility for the conduct or result of the suit in which the judgment is rendered ; otherwise, the judgment proves only the fact of its own existence." And in the next section, this author states that " where the obligation of the surety is simply to pay money, if the principal fails to do so, there is no such privity between them as will make a judgment against the principal evidence against the surety. But the case is different with regard to sureties on bonds given in the course of a suit or other proceeding, for in the latter instance the surety submits himself to the acts of the principal and to the judgment as itself a legal consequence falling within the suretyship."

In the American and English Encyclopedia of Law (vol. 12, p. 98), the rule is thus stated : " Where a surety has contracted with reference to the action of his principal in some judicial proceeding, he is bound by a judgment against the latter. It would seem by the weight of authority in all other cases of suretyship, a judgment against the principal is at least *prima facie* evidence against the surety. But a surety may show that a judgment against his principal was obtained by fraud or collusion, or that the court had no jurisdiction to render the judgment."

With respect to bonds given by administrators, it has been held in this State (*Casoni* v. *Jerome*, 58 N. Y. 316) that sureties are

bound by the decree of the surrogate, " because, by their contract, they have made themselves privy to the proceedings against their principal, and when the principal is concluded, the surety, in the absence of fraud or collusion, is concluded also " — citing cases.

In *Harrison* v. *Clark* (87 N. Y. 576), *Casoni* v. *Jerome* was cited and approved, and, therefore, the law may be regarded as settled that, with respect to sureties upon an ordinary administration bond, they are bound by the decree of the surrogate, or by a judgment against their principal, in the absence of fraud or collusion.

The surety's obligation upon such bonds is to be responsible for the faithful discharge of the administrator's duties, and the binding force of a decree, as stated in the authorities, results from the nature of the contract or obligation which the surety assumes.

The inconsistency that upon a first glance would seemingly be present in the authorities will be dissipated if we bear in mind that there is no fixed or rigid rule which under all circumstances would make a surety bound by an order or judgment against his principal, but the question as to whether or not he is so bound is to be determined by the nature of his obligation and the language and terms of the bond itself. Thus, in *Thomson* v. *MacGregor* (81 N. Y. 593), which was a case of a receiver's bond, the surety upon which was sued after the principal was ordered to pay over a sum adjudged to be the balance of the trust funds in such principal's hands, which order was not obeyed, and where it was claimed that such order was conclusive upon the surety, it was held that the surety was not bound by the order, " and in the absence of express terms in the bond binding him to submit to the judgment of the court, such a liability could not be imposed upon him."

To determine the surety's liability and the extent to which he is bound by the judgment against his principal in the case at bar, resort must be had to the bond itself, which provides as follows : " Now, the condition of this obligation is such, that if the above-bounden Welcome R. Beebe shall and will well and faithfully perform and discharge his duties as such trustee as named in said order, then this obligation shall be void, else to be and remain in full force and virtue."

We here find that, neither by the nature of the contract, nor the

express terms of the bond, does the surety obligate himself to be bound by the judgment of the court; and when it is sought to charge him, after the death of the principal, with the latter's unfaithfulness, he should not be precluded by a judgment obtained against the representatives of the deceased principal, in an action to which he was not a party and of which he had no notice.

But, assuming that the judgment was not binding upon the surety, there was, nevertheless, evidence presented showing that the former trustee had received the principal of the fund and had failed to turn over the same, having converted it to his own use. The finding to this effect, therefore, was based on sufficient evidence, and, nothing to the contrary being shown, it would justify a recovery against the surety for such principal sum.

In regard to the interest, it seems to me there are two grounds opposed to the recovery thereof.

In the first place, no evidence has been given that interest was ever received by the trustee, and in the absence of such evidence the surety has a right to invoke the rule that a trustee is not liable to pay interest upon a fund to a greater extent than interest has been received, which rule would prevent the trustee's being chargeable with interest in a case where no interest was obtained by him upon a trust fund.

*Secondly,* even though it had been shown that interest had been earned, it could not have been recovered by this trustee, because it was money that belonged, not to the trustee, but to the beneficiary, to whom it should from time to time have been paid, and as to her right to recovery, in view of the *laches* here appearing, there would be serious question. For with respect to the interest on the trust fund, which could have been demanded yearly, there is much force in the suggestion that the failure of the beneficiary, through the trustee or otherwise, to enforce her claim to the income that may have been earned by the trust fund for nineteen years, was such *laches* as to preclude the trustee for her benefit enforcing such a liability against the sureties. This would not affect the surety's liability for the fund, because as to such trust fund Beebe was entitled to hold the same during the life of the beneficiary, and it was only upon his death and the appointment of another trustee that the right to demand it existed. It should be remembered in regard to the interest, how-

ever, that the beneficiary was of full age, and in a position to enforce her claims against the trustee; and the evidence shows that during all these years she had other business transactions with the trustee, and that, as appears from the judgment roll, payments had been made to her " aggregating large sums of money, far exceeding the trust fund or interest thereon." The referee held, upon the testimony before him, that these moneys so paid by Beebe had reference to other claims held by the beneficiary against him, and were properly applied to discharge such claims, leaving Beebe still chargeable with the trust fund and interest thereon. This conduct of the beneficiary in permitting during nineteen years the trustee to retain the principal and any interest that may have been earned on the fund, seems to us to have been a violation of that duty which the beneficiary owed to the sureties.

Such interest if earned yearly, could have been obtained in a proper proceeding, and it was unquestionably *laches* for the beneficiary to suffer all these years to pass by and pile up a liability against the sureties, which she could have prevented by insisting upon her rights, and thus she would have discharged the duty which in all fairness she owed to the sureties upon the bond. We do not think, after such conduct, that she should be allowed to profit thereby at the expense of the sureties. In view of the grave question presented as to whether the trustee ever received any interest on the trust fund — the claim being that he had mixed such trust fund with his own money, and had never had the same out at interest, which could have been prevented by the slightest effort or diligence being exercised to ascertain the condition of the fund by the beneficiary at any time during these nineteen years — no hardship or injustice results to the beneficiary or those succeeding to her interests by preventing her from profiting by her own *laches*.

Although the case of *Toles* v. *Adee* (91 N. Y. 562) is not similar to the one at bar in any way, the general statement of the law therein contained is applicable to the question we are here discussing. As therein said : " Where the contract of a surety is not an absolute guaranty of payment of a debt of his principal, but simply an undertaking of such a nature that proceedings must be taken against the debtor before the obligation of the surety to pay arises, the law implies a condition on the part of the creditor that due

diligence shall be used in proceeding against the principal; and to establish a defense based on a breach of this condition it is not necessary for the surety to show a request on his part to the creditor to proceed, and damage resulting to him from a failure to comply." The law presumes injury, and it is not incumbent upon the surety to establish it as a matter of fact.

But, apart from all this, the beneficiary, and not the trustee, could alone recover such interest.

Another, and a serious question, is as to the validity of the order appointing Maria Collins trustee in the place and stead of Beebe, deceased. She was the life beneficiary, and the result was to vest in her as trustee, the legal title to a fund, the use, interest and income of which was bequeathed to her during life.

In *Greene* v. *Greene* (125 N. Y. 506), it is said: To the constitution of every express trust there are essential these elements, viz., a trustee, an estate devised to him, and a beneficiary. The trustee and the beneficiary must be distinct personalities, or otherwise there could be no trust, and the merger of interests in the same person would effect a legal estate in him of the same duration as the beneficial interest designed. That the legal and beneficial estates can exist and be maintained separately in the same person, is an inconceivable proposition. It is quite as much of an impossibility, legally considered, as it is physically."

And in *Woodward* v. *James* (115 N. Y. 346), the court said: "It is undoubtedly true that the same person cannot be at the same time trustee and beneficiary of the same identical interest. To say that he could, would be a contradiction in terms as complete and violent as to declare that two solid bodies can occupy the same space at the same instant."

Upon these, and other authorities which support the same view, it is strenuously urged by the appellant that the order of the court appointing Maria L. Collins trustee, was an absolute nullity, upon the theory that no person can be both trustee and beneficiary for the same interest at one and the same time; that the existence of this dual relation is a physical and legal impossibility, and that no decree, however positive in its terms, can render such a relation a reality. We think, that in this argument, and in the authorities to which reference has been had, the appellant overlooks the distinction between

the creation of a trust, and the selection of a trustee to carry out the provisions of a valid trust.    As held in *Greene* v. *Greene* (*supra*), the fact that the beneficiary was appointed trustee, would prevent the creation of a valid trust, and for the reasons therein stated.    But where a valid trust has been created — which it is conceded was the situation in the case at bar — it remains but to determine what effect, if any, results from the appointment of the beneficiary for life as trustee of the trust fund.    It no doubt would have been more advisable to have selected some one else, because, as the fund was intended eventually to go to persons other than the beneficiary for life, it would be more natural, and apparently more secure, to have it held by some one other than such life beneficiary, who might not be very zealous in seeing that the fund was preserved and kept intact for those who would succeed after her death.    We do not think, however, that any of these reasons or suggestions as to the impropriety of the appointment are sufficient to justify our holding that the court was without jurisdiction, and that the order itself appointing the life beneficiary was void, or, as contended for by the appellant, an absolute nullity.    Those interested might have a reasonable ground for applying for another trustee; but we fail to see how, upon the trial of an action brought by a trustee appointed by order of the court, the surety upon a bond given by a former trustee can thus collaterally assail the validity of this appointment.    Assuming, however, the surety has such right, we do not think that the order appointing the beneficiary as trustee was either a nullity or void, for, as held in *Moke* v. *Norrie* (14 Hun, 133), "a *cestui que trust* is not absolutely excluded from occupying the relation of trustee for his own benefit, and especially is this so where he is but one of several trustees."

I, therefore, have reached the conclusion that for the principal sum shown to have been given to the trustee and never accounted for to the beneficiaries, the surety is liable, less any amount which he can legally claim as an offset against the same.    In this connection the defendant proved that he had given to the beneficiary some $900, and this fact was found by the learned trial judge.    This finding was not excepted to, and no appeal having been taken by plaintiff from the judgment, the defendant is entitled to be credited with such amount.

My opinion is that the judgment in favor of the plaintiff should be reduced to the principal sum of $4,297.29, less the $900, for which balance, with interest thereon from the 22d day of May, 1884, the plaintiff should recover, and that the judgment, as so modified, should be affirmed, without costs to either party upon this appeal.

Ingraham, J.:

I do not think that the judgment against the executor of Beebe is conclusive upon these defendants, who were sureties upon Beebe's bond, but who were not parties to the action in which such judgment was rendered, and had no notice of its pendency.

It seems to me that this question was presented in the case of *Thomson* v. *MacGregor* (81 N. Y. 596), and that the decision therein is controlling.

In that case, one Riker was appointed receiver of copartnership property, and he gave a bond, the condition of which was: " If the said Charles B. Riker shall henceforth faithfully discharge the duties of his trust, etc." Riker was removed as receiver, and by an order upon an accounting was directed to pay to his successor a sum of money as the balance in his hands.

It was held in the court below in that case that that order was conclusive upon his sureties; and in reversing the judgment against the sureties, the court say : " If the order was wrong, if the receiver owed no balance, if he was required to pay what was not due, then he had faithfully performed his duty as receiver, though not obeying the mandate of the court."

It is said the surety has contracted that the receiver will pay. Undoubtedly, but pay *what ?* Not any sum which the court may order, unless, indeed, the surety had bound himself by that rigorous contract, but such sum as the receiver justly owes and as an honest and faithful officer ought to pay. And upon that question the surety has a right to be heard.

We do not see that it avails anything to try to distinguish between an order which is binding as an adjudication against his principal, and an order which is conclusive evidence as a fact. The substantial thing remains though the phrases are changed. The doctrine pushed to its logical results might make every surety for the performance of duty bound by the adjudication against his principal or so nearly

so as to practically abrogate the rule which holds him only when he has explicitly contracted to submit himself to the judgment of the court.

We think the vice of the reasoning lies hid in the failure to sufficiently distinguish the relative positions of the principal and surety. As between the principal and the creditors of the fund it is the receiver's duty to pay according to the order, for he has been heard and is bound by the adjudication. But as between the surety and such creditor it is not the receiver's duty to pay according to the order made without the surety's knowledge as to which he has not been heard, and which is not against him a binding adjudication.

And in commenting upon the cases where it is held that the sureties on an administrator bond are bound by an adjudication as to the amount due by the administrator, such as *Schofield* v. *Churchill* (72 N. Y. 565), and *Casoni* v. *Jerome* (58 id. 320), the court say: " In those cases besides the general covenant to faithfully execute the trust reposed, there is also the special agreement to obey all orders of the surrogate. That the rule in these cases which makes the adjudication against the principal conclusive on the surety is always based upon the special covenant which in terms submits the latter to the judgment or order of the court indicates very plainly that the general words were not deemed sufficient in and of themselves to effect that result. \* \* \* In every decision which has made the adjudication against the principal conclusive upon the surety it has been founded on apt words or phrases other than a general promise to perform duty and which indicated an understood purpose to contract beyond the ordinary liability."

The condition of the obligation sued on in this case is as follows: " Now the condition of this obligation is such that if the above-bounden Welcome R. Beebe shall and will well and faithfully perform and discharge his duties as such trustee as named in said order then this obligation shall be void, else to be and remain in full force and virtue." And as was said in *Thomson* v. *MacGregor* (*supra*), if the trustee accounts for the trust fund which has come into his hands, he has well and faithfully performed and discharged the duties as such trustee, and the plaintiff, to recover upon the bond, must prove by evidence admissible against the sureties that the principal had failed to account for the trust estate in his hands.

The court below found that Beebe was appointed trustee by an order of the Supreme Court, dated September 11, 1865. That fact was proved by the order of the court making the appointment, and that order is also recited in the bond signed by these defendants.

The court also found the making and execution of the bond sued on, which bond was also introduced in evidence. The court also found that on the 25th of October, 1865, the sum of $4,297.29 was paid to Beebe as trustee, and that fact was proved by the evidence of John Collins, who swore that he was present when the money was paid to Beebe. The court then found that Beebe continued to be trustee of the fund to the date of his death, which occurred on the 22d of May, 1884; that he left a last will and testament, which was admitted to probate and letters testamentary issued to his executors therein named, and there was evidence to sustain these findings.

The court then found that, by an order dated 24th of June, 1884, Maria Louisa Collins, the relator plaintiff in the action, was appointed by the court to receive and hold the said fund of $4,297.29, in place of said Beebe, and that fact was proved by the order making such appointment, and that the trustee therein named duly filed her bond and qualified.

The court also found that on the 24th day of January, 1885, a certified copy of such order was served upon Beebe's executor, and a demand was made for the payment to the substituted trustee of the fund of $4,297.29, which demand was refused and no payment was made, and that fact was proved by the person making the demand.

It was also found, and such finding was sustained by evidence, that the substituted trustee commenced an action against Beebe's executors to recover that fund and the accrued interest thereon. That judgment was subsequently entered against said executors for the amount of said fund and accrued interest, and execution having been issued upon such judgment, it was returned unsatisfied, and no part thereof has been paid.

It was thus clearly proven by competent evidence that the trustee had failed to perform and discharge his duty as trustee as to the principal of said trust fund, and plaintiff was, therefore, entitled to judgment against the sureties for the principal of such fund and interest from the date of the judgment against the trustee.

There was, however, no evidence in the case that the trustee had

received, or had failed to pay to the beneficiary named, the income upon the trust fund prior to his death.

There is also another objection to the recovery of any interest by this plaintiff, which is fatal to such a recovery. The order appointing the plaintiff trustee is not printed in the case, but the court found that by such order, " the relator, plaintiff herein, was appointed, upon her application to this court, trustee, to receive and hold the said fund of $4,297.29, and to apply and use the interest and income thereof to her own use, as in and by the said last will of said Ann Bloodgood, her mother, directed, and to account for and pay over the principal unto the person or persons to whom the same shall be determined to belong."

By this order, the said substituted trustee was not appointed trustee of, nor authorized to receive the income that had accrued prior to the death of Beebe. Indeed, such income was not part of the trust estate, but belonged to the person named as beneficiary, individually, and it would appear that all the substituted trustee was entitled to recover from the estate of the deceased trustee, was the trust fund, leaving the beneficiary to proceed against the trustee for the amount due her individually for income of such trust property.

The defendant, however, objects to judgment being entered, on the ground that the appointment of the substituted trustee in place of said Beebe, was absolutely void, on the ground that the court had no power to appoint a beneficiary in such a trust, as trustee.

I do not think, however, such order was void. It appeared by the will of Ann Bloodgood, that Maria Louisa Collins, the person appointed such substituted trustee, was given and bequeathed the use, interest and income of the sum of $4,500, for and during her natural life, to be paid to her half yearly, on her separate receipt. As no trustee was appointed by such will, this court, by an order entered on the 11th of September, 1865, appointed Welcome R. Beebe trustee, to receive that sum, and apply the use, interest and income of said fund in the manner, and to the person in the said will of said Ann Bloodgood mentioned. This trustee was appointed by virtue of the jurisdiction vested in a court of equity, to prevent the failure of the trust by reason of the failure to appoint a trustee, and the court thus took upon itself the execution of the trust.

HUN — VOL. LXX.     42

Upon the death of Beebe, the trust vested in the Supreme Court, and it became the duty of the court to appoint a person to execute the trust. I think the court had power to appoint the beneficiary for that purpose, and it was that power that the court exercised when it appointed the relator plaintiff as such trustee.

The decisions that hold that a valid trust is not created, where the person creating the trust attempts to vest in the beneficiary the trust property as trustee, does not apply, for here a valid trust was created and there is no restriction in the power of the court as to the selection of its agent to carry out the trust.

It is not necessary that we should approve of the action of the court in appointing the beneficiary as the person to execute the trust, but I do not think that the action of the court in appointing such person was void, so that such action can be attacked collaterally.

It appears, therefore, that under the order appointing plaintiff as such trustee, no recovery can be had in this action for interest upon the trust fund prior to the death of Beebe.

The court also found that defendant Donohue between January 1, 1887, and January 1, 1890, lent and advanced to plaintiff divers sums of money amounting to the sum of $900, and as conclusion of law that defendant was entitled to deduct that sum from the amount due on the bond.

The plaintiff, in his brief submitted on the argument of this appeal, objected to the allowance of this sum, but he did not except to the finding of the court nor to the conclusion of law and did not appeal from the judgment. The plaintiff cannot object on this appeal to the allowance of this $900, and it should be deducted from the amount due to plaintiff.

The judgment should be modified by reducing the recovery to the sum of $4,297.29, less $900, making $3,397.29, and interest thereon from the 22d day of May, 1884, and as so modified affirmed, without costs to either party upon this appeal.

Van Brunt, P. J. (dissenting):

Upon an inspection of this record it would appear that this action was tried at a Circuit Term of the Supreme Court of the State of New York. We are not aware of the existence of any such term or branch of the Supreme Court, and, if the regularity of this judg-

ment had been assailed upon the ground that it appeared upon its face that the proceedings were assumed to have been had in a court which had no existence, a serious question might have been raised. It is apparent that the counsel for the respondent is unaware of the fact that the Circuit Courts and the Supreme Court are entirely different tribunals, and that there is no provision of law by which issues of fact can be tried before a jury in the Supreme Court. But as no motion has been made to set aside this judgment upon that ground, it cannot be considered here. But this manifest looseness of practice and ignorance of the constitution of the courts cannot be allowed to pass unnoticed.

In the disposition of this case the questions of law involved will be considered upon the findings of the learned court below.

It appears that by the will of one Ann Bloodgood, who died in March, 1855, there was given and bequeathed the use, income and interest of the sum of $4,500 to Maria Louise Collins for and during her natural life, to be paid to her half yearly on her own separate receipt ; that letters testamentary upon this will were issued to one William C. Brinckerhoff, an executor therein named ; that upon the settlement of the estate of said Ann Bloodgood, the said sum of $4,500 became reduced to the sum of $4,297.29 ; and that by order of the court, in September, 1865, one Beebe was appointed trustee to receive said sum of $4,297.29, and to apply the use, interest and income of said fund in the manner and to the person in said will of said Ann Bloodgood mentioned ; that said Beebe was required to give a bond in the penal sum of $10,000, and that the bond upon which this suit was brought was thereupon executed by the defendant Donohue and one Ryckman, which bond was duly approved, and thereupon said sum of $4,297.29 was paid to Beebe ; that Beebe continued to hold said fund until his death, which occurred in May, 1884, and subsequently thereto his last will and testament was duly admitted to probate by the surrogate of the county of New York ; that in June, 1884, this court attempted to appoint said Maria Louise Collins the beneficiary of the fund in question upon her application, upon her own petition to the court, trustee to receive and hold said fund, and to apply the use, interest and income thereof to her own use, and to account and pay over the principal to the person to whom the same should be determined to belong, and in January, 1885,

said Collins, having duly qualified by executing the bond required by the order appointing her, demanded of the executors of Beebe the fund of $4,297.29, together with the interest thereon, and that they refused to comply with the demand so made ; that in August, 1885, said Maria L. Collins, as trustee, commenced an action against the executrix and executors of Beebe for an accounting of the acts and proceedings of Beebe as to said fund, which accounting was duly ordered, and upon the coming in of the referee's report upon such accounting a judgment was entered for the sum of $12,367.65, being the principal sum of $9,696.40, together with interest thereon from the 22d of May, 1884, and $658.19 costs of the action, in all amounting to $13,025.84 ; that upon due leave of the surrogate execution was issued upon the judgment, which was returned by the sheriff wholly unsatisfied ; that no part of said judgment has been paid, and the same remains wholly unpaid ; and that demand for the payment thereof has been made of the defendants Donohue and Ryckman, and they both refused to comply with such demand. The court found that the defendant Donohue had loaned and advanced to said Maria L. Collins the sum of $900.

Upon these facts, judgment was given by the court against the defendants Donohue and Ryckman, for the amount of the bond, $10,000, with interest thereon from the 20th of December, 1888, $2,100, amounting in the aggregate to $12,100, less $900, making in all $11,200, besides the costs and disbursements of the action ; and judgment having been thereupon entered, this appeal is taken.

Various questions have been raised upon this appeal, some of which it is necessary very briefly to discuss. And the first is that the court had no power whatever to appoint Maria L. Collins trustee, and that she could obtain no title whatever to the trust fund, by reason of such appointment.

It is claimed by the counsel for the respondent, that said Maria L. Collins, as *cestui que trust*, was not excluded from occupying the relation of trustee for her own benefit, and he cites some authorities which favor that view. But it seems to us that a very brief consideration of those things necessary to the existence of a trust, shows the fallacy of such a position, and the recent authorities are distinctly opposed to any such incongruity.

It seems to be absolutely certain that the court has no greater

power in the appointment of a trustee than a testator has. And if a testator has no power to 'appoint a *cestui que trust* his trustee, then it would seem to follow as a natural consequence that an attempt upon the part of the court to make such an appointment would be wholly nugatory. There are three necessary ingredients to the existence of a trust, *first*, the subject-matter of the trust, *second*, a trustee, and *third*, a beneficiary. And if there is an attempt to merge the functions and duties of a beneficiary with those of a trustee, the trust is absolutely destroyed.

In the case of *Woodward* v. *James* (115 N. Y. 346–357), this view was sanctioned, where it is held that "it is undoubtedly true that the same person cannot be at the same time trustee and beneficiary of the same identical interest. To say that he could, would be a contradiction in terms as complete and violent as to declare that two solid bodies can occupy the same space at the same instant. Where, however, the trustee is made beneficiary of the same estate, both in respect to its quality and quantity, the inevitable result is that the equitable is merged in the legal estate, and the latter only remains."

And in the case of *Coster* v. *Lorillard* (14 Wend. 265), it was held that the legal character of the trustee is wholly separate and distinct from that of the beneficiary, each is incompatible with the other, and both cannot by any possibility be united in the same person. It is, therefore, apparent that the court had no power to make the appointment of this beneficiary as a trustee for herself, and if such a thing was attempted to be done, such action upon the part of the court would be void.

Now it is to be observed that all that the court did was to appoint Maria L. Collins trustee to receive and hold the said fund of $4,297.29, and nothing else, and to apply the use and income of that fund to her own use and to pay over the principal, etc. She was not appointed trustee of any claims which existed against the prior trustee, or of any income with which the prior trustee was chargeable. She was simply appointed trustee of the original fund of $4,297.29, and of nothing else.

Under these circumstances, it is difficult to see how she acquired title as trustee to anything more than the fund of which she was appointed trustee. And, therefore, the claim sought to be enforced

in this action, and for which judgment has been rendered, is far in excess of anything to which the court has attempted to confer title upon her.

If it be urged that the judgment against the executors of the former trustee is conclusive upon these defendants, it is sufficient to say that it appears upon the face of the title, upon which the rights of the plaintiff who brought the action absolutely depend, that she had no claim whatever to a large part of the amount which went to make up that judgment. And there is no rule which makes a surety responsible simply because a judgment is entered against his principal, which, upon its face, shows that it was entered without right.

Under these circumstances, we think that the judgment appealed from was erroneous and should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

Judgment modified as directed in opinion, and, as modified, affirmed, without costs to either party upon this appeal.