POWELL v. MURRAY, et al.

A deed perfectly gratuitous and voluntary will not, for that reason, be set aside, when free from fraud and when the party has not thought proper to reserve a power of revocation.

Where a wife's property (settled upon her) is the subject of a deed, equity looks upon her as a feme sole. Incident to the ownership in her is the power of disposition, without the assent or concurrence of her husband. Such a deed may, therefore, be valid where she has had the benefit of it, even though the husband is made a party and has not signed. She cannot, on this ground, take advantage of it.

A deed acquiesced in for thirty-six years will not be set aside.

Laches and neglect are always to be discountenanced in equity. A party must not sleep upon his rights here any more than at law. And this principle is more particularly applicable to stale demands brought forward and attempted to be supported for the first time after the death of an original party.

---

*Nov.* 26, 27, 28, 30, 1835.

*Voluntary conveyance. Husband and wife.*

Elizabeth Inman, of the town of Boston, by her will bearing date the fourteenth day of May in the year one thousand seven hundred and eighty-five, after various bequests therein contained, bequeathed as follows :

" My will is that Mrs. Anne Powell, wife of William Dummer Powell, be paid and receive from my estate hereafter described the lawful interest of two thousand pounds sterling, which interest is to be paid to her annually for and during her natural life and for her own personal use and disposal. And that after her decease the said principal sum of two thousand pounds sterling be paid and distributed to and among her present and future children in equal proportions, that is to say, among those who survive her decease, unless they have issue, which issue shall represent their deceased parent. Provision for said two thousand pounds sterling and interest· is to be made and secured by certain messuages and lots of ground " (which she describes in the will as situated in Boston) which two messuages so charged as security and from which the said sum is to be raised and not otherwise, my executors may sell and dispose of in fee simple or otherwise and vest the proceeds in such funds or securities as they think will most effectually

secure the payment of said two thousand pounds sterling and interest."

"Item. I give and devise to John Innes Clark of Providence, Rhode Island, Esquire, and to John B. Murray, late of Providence, now in Virginia, merchant, my two nephews, the said messuages, &c. incumbered with the payment of the said two thousand pounds and interest, provided for Mrs. Powell and children, in manner and form aforesaid, to hold the same to the said Clark and Murray their heirs and assigns in equal portions incumbered as aforesaid; and when the premises are exonerated therefrom, the same or the residue thereof shall be and remain to the use of the said Clark and Murray their heirs and assigns in equal portions."

Clark and Murray, together with one Edward H. Robbins, were appointed executors, with full power and authority to sell and dispose of the whole or any part of the estate, real or personal, as they, for the better execution of the will, might think proper.

Soon after making the will, the testator died; the will was proved; and Clark and Robbins took upon themselves the office of executors. Clark and Murray also accepted the devise of the real estate in Boston, subject to the charge of the legacy in favor of Mrs. Powell and her children; and from the year one thousand seven hundred and eighty-five to the twenty-seventh day of November, one thousand seven hundred and ninety-one, they paid to Mrs. Powell the lawful interest of the two thousand pounds sterling, which was six per cent. per annum.

By an instrument bearing date the twenty-sixth day of March one thousand seven hundred and ninety-two, purporting to be made between Clark and Murray of the one part and William Dummer Powell and Anne his wife of the other part (wanting the signature and seal of the husband, but executed under the hand and seal of the wife and of the other parties) and reciting the bequest to Mrs. Powell and that, ever since the death of the testatrix, they had paid to her the lawful interest of the two thousand pounds according to the will; and then, in consideration of Clark and Murray's agreeing to pay Mrs. Powell an annuity of four

1836.

POWELL
v.
MURRAY.

hundred dollars, in half-yearly payments, during her natural life and for divers other good causes and considerations, the instrument purported to grant, bargain, assign and set over to Clark and Murray, their heirs, executors, administrators and assigns all and every part of the interest of the two thousand pounds sterling money, with all the right, claim and demand of Mr. and Mrs. Powell to the same during the natural life of Mrs. Powell; with a covenant that Clark and Murray, their heirs, executors, administrators and assigns should, at all times, take and enjoy the annual payment of interest, without any molestation, let or hindrance from Mr. and Mrs. Powell or any persons claiming under them— and declaring that the said annual payment of interest should, at all times during the life of Mrs. Powell, remain and continue unto Clark and Murray and their assigns.

Pursuant to this arrangement and the stipulations contained in this instrument, Clark and Murray, from that time, paid to Mr. and Mrs. Powell the annuity of four hundred dollars, instead of the interest of two thousand pounds sterling, which was equal to five hundred and thirty-three dollars and thirty-three cents, until the year one thousand eight hundred and six, when Clark died. Murray continued the payments until his death, which happened in one thousand eight hundred and twenty-eight.

In the year one thousand seven hundred and ninety-four, they had sold the property devised to them, subject to the charge; and realized from the sales a sum exceeding two thousand pounds sterling.

In order to secure the sum of two thousand pounds sterling, by way of an investment, so as to produce the annuity of four hundred dollars during the life of Mrs. Powell and the capital at her death to be divided among her children, as directed by the will, they made a loan of money to their co-executor Robbins upon his bond and mortgage of certain property situated in Boston, dated the thirty-first day of October, one thousand seven hundred and ninety-four. How much money was loaned was, in the present suit, left in some doubt and uncertainty: but the bond and mortgage were conditioned for the payment of four hundred dollars a year in semi-annual payments during the life of Mrs. Powell

and two thousand pounds sterling, equal to two thousand six hundred and sixty-six dollars, thirteen shillings and four pence lawful money of Massachusetts, at her death.

The mortgage remained in the hands of Murray, after Clark's death, until one thousand eight hundred and nineteen, when the then owners of the property, upon which it was a lien, proposed to pay it off to Murray, provided he would secure to them, by his bond, the payment of one hundred and thirty-three dollars and thirty-three cents a year during the life of Mrs. Powell—being the difference of interest between what the money was worth to them, namely, six per cent., and the four and an half per cent. or four hundred dollars a year payable through the mortgage for the same length of time. Murray acceded to this; received the money; discharged the mortgage; and gave to the persons in Boston his bond for the payment of the one hundred and thirty-three dollars and thirty-three cents annually— and which he and his representatives had ever since paid and continued to pay, the bond being still in force against them.

The principal sum of two thousand pounds sterling or eight thousand eight hundred and eighty-eight dollars and eighty-eight cents was thus received by Murray; and came into the hands of his administrators.

The bill was filed in this cause in the year one thousand eight hundred and thirty by and in behalf of Mrs. Powell and her children against the personal representatives and heirs at law of Murray. The personal representatives of Clark's estate had also been brought in as defendants.

The object of the bill, so far as Mrs. Powell was concerned, was to set aside the deed of the twenty-sixth day of March one thousand seven hundred and ninety-two; and to have an account of the arrears of interest of two thousand pounds sterling, being the difference between what was directed by the will to be paid to her and the four hundred dollars which she had received. And as regarded her children, who were also complainants, the bill also sought to have the principal set apart and secured for their ultimate benefit.

The claim was made, on the part of Mrs. Powell, in

opposition to the deed, on several grounds—such as its not being founded upon any valuable or meritorious consideration and, therefore, not binding upon her—that it was defective in its execution, her husband being named as a party and not having signed it—that it was obtained from her in violation of her rights under the will and in breach of the duty of Murray and Clark as executors and trustees—that they had derived a profit and pecuniary advantage from the arrangement which they could have no right to retain—and to obviate any difficulty arising from lapse of time and a supposed acquiescence on the part of Mrs. Powell and her husband since the year one thousand seven hundred and ninety-two, it was contended that they remained ignorant of facts upon which she had now a right to seek redress.

As early as the year one thousand seven hundred and eighty-nine, it appeared to have been a subject of discussion between the executors and Mr. Powell, whether the provision made by the will for his wife was liable to abatement as a legacy, provided the nett rents or income of the property, after repairs and incidental expenses deducted, should not be equal to the lawful interest of two thousand pounds sterling. There appeared to have been some apprehension that the income would not be sufficient; and this gave rise to the question, whether repairs, &c. were not to be paid out of the general funds of the estate, instead of suffering the provision made for her by the will to be diminished. She, nevertheless, continued to receive the full amount down to the month of November one thousand seven hundred and ninety-one.

After this, the property requiring considerable repairs, it appeared to have been deemed uncertain how far the nett rents would go towards satisfying her demands. Clark and Murray held out the idea that the amount she might thereafter receive would be fluctuating; and, under these circumstances, the proposition was made to allow her a sum certain, by way of life annuity, to be regularly paid by them instead of leaving her dependent upon the rents and income of the property and, (as was presumed, with a view of avoiding all difficulty and uncertainty as to the amount,) she was induced to agree to the proposal of their taking the

property to themselves and paying her four hundred dollars a year during her life and securing the whole of the principal sum, according to the will, for the benefit of her children at her death.

By this arrangement she relinquished one fourth part of her own interest. The offer appeared to have been made in good faith and from honest motives; and was deliberately accepted by Mrs. Powell. She was on her way from Canada to England at the time, with her family of children, for the purposes of educating them; and was staying at the house of her brother Mr. Murray, one of the executors and residuary devisees in Virginia. Her husband remained in Canada; and although it did not appear that she took time to consult him by letter or otherwise on the subject, yet it might be inferred that she was already acquainted with his views—and if not, there still were others near her in whom she could confide and whose advice she could ask, viz. her two other brothers George W. Murray and James V. Murray and her relative John R. Wheaton—the former of whom appeared to have taken some part in the transaction and was privy to her executing the deed, a clause subjoined to the instrument being in his handwriting and the two latter subscribing their names as witnesses.

Further facts of the case will be found embraced in the opinion of the court.

Mr. *G. Sullivan*, for the complainants.

Mr. *John Duer* and Mr. *John L. Mason*, for the defendants.

THE VICE-CHANCELLOR:—There is no pretence of fraud in the ceremonial or manner of obtaining Mrs. Powell's signature and seal or her having executed the instrument without a knowledge of its contents; and I can perceive no room for imputing intentional fraud to any of the parties.

*April 25th,*
**1836.**

Nor can the deed be considered a voluntary one and without consideration. A valuable consideration was given in the grant of the annuity as a substitute for what she gave up or parted with. It is true that the one was a fourth less than the other; but the inadequacy is not such as, under the

circumstances, amounts to evidence of fraud. In the absence of such fraud, the transaction must be allowed to stand, although this lady voluntarily and without an equivalent relinquished a part of what she was strictly entitled to by the will. If the will were now before me for adjudication, I should say she was entitled to the whole of the provision, without abatement ; and if the rents or income were insufficient to produce the interest of two thousand pounds sterling a court of equity would compel a sale for the purpose of raising the two thousand pounds and investing it at interest for her benefit.—But, if she chose to forego the right of insisting upon the provision of the will, preferring the certainty of four hundred dollars a year for herself and the full sum of two thousand pounds sterling for her children at her death, rather than have a forced sale of the property, which possibly might not have produced the full amount, it does not follow she shall afterwards be relieved.

A deed perfectly gratuitous and voluntary will not, for that reason, be set aside in equity, when free from fraud and when the party has not thought proper to reserve to himself a power of revocation : *Villers* v. *Beaumont,* 1 Vern. 100 ; *Colman* v. *Sarrel,* 1 Ves. J. 50.

The court cannot suppose that Mrs. Powell was uninformed as to her rights or labouring under any delusion or misconception of what she was entitled to under the will. Her husband, it appears, had previously been appointed judge of the court of King's Bench of Upper Canada ; and, a few years afterwards, chief justice—which office he filled for many years. It may be supposed he was competent to form a correct opinion as to what were her rights under the will and how those rights could be enforced. It appears, moreover, that in the year one thousand seven hundred and eighty-nine or about that period he visited Boston ; and consulted and employed counsel there to look after and assert her claims, if the executors should refuse to pay. Mrs. Powell was doubtless informed of her husband's opinion of the will and competent to act understandingly on the subject of the proposed arrangement. She was not surprised into it. No undue advantage was taken of her necessities or situation. The letters, containing the propo-

sal, evince no desire or anxiety to have her agree to it unless after she had become perfectly satisfied.

It is not like the case of *Evans* v. *Llewellin*, 1 Cox's Ca. 333, and 2 Bro. C. C. 150, where deeds were set aside as being improvidently obtained on the ground of an inadequacy of consideration: the parties being in low circumstances, unapprised of their rights until the very time of the transaction—and then taken by surprise—no opportunity allowed them to consult their friends and none present to give them advice—the transaction hurried through—and although no actual fraud appeared to be intended, those circumstances partook of fraud and the court granted relief. But it is not so here.

With respect to the point of defective execution of the deed, inasmuch as the husband, although named as a party, has never signed it: I think it cannot be successfully urged. The subject matter was the separate property of the wife, in regard to which equity looks upon her as if she were a *feme sole*. Incident to the ownership in her was the power of disposition over it, without the assent or concurrence of her husband: *Fettiplace* v. *Gorges*, 1 Ves. J. 46, and 3 Bro. C. C. 7; *Sturgis* v. *Corp*, 13 Ves. 190; *Essex* v. *Atkins*, 14 Ib. 542; and having executed the instrument for herself and had the benefit of it, she cannot, afterwards, be permitted to take advantage of the omission of her husband's signature and seal to cancel her own. Besides, if the husband's concurrence was necessary, there is abundant evidence of a complete recognition of the deed on his part as a valid and subsisting instrument. He subsequently appointed agents to receive the money under it; and in the year one thousand eight hundred and eighteen united with Mrs. Powell in a power appointing Mr. George Gallagher their attorney for the special purpose of receiving the money which was payable by the deed. This one act of the husband's is a sufficient ratification, at least in equity.

But a still stronger ground upon which the court cannot now interfere to set aside the deed and open the transaction is the lapse of time. The parties have acquiesced from one thousand seven hundred and ninety-four to the year one thousand eight hundred and thirty—a period of about thirty-

six years. There is some evidence of occasional dissatisfaction expressed by Judge Powell in one thousand eight hundred and five and one thousand eight hundred and six and of his threatening or causing a chancery suit to be commenced; but if so, it was abandoned—and in eighteen hundred and nine and the following year it would seem to have been no longer a subject of discontent and he then went on receiving the half-yearly payments of the annuity. No sufficient evidence is given of his inability to prosecute a suit for the purpose of vacating the deed and of restoring Mrs. Powell to her rights under the will. The delay is not accounted for.

In *Gregory* v. *Gregory*, Cooper's R. 201, a bill was filed to set aside a purchase made by a trustee, upon the ground that the consideration for the conveyance was grossly inadequate—that the plaintiffs were ignorant, at the time, of the value of their interests under the will and were in indigent circumstances and advantage was taken of them. Eighteen years elapsed before filing the bill and upon that ground alone it was dismissed, although the case presented strong equities and the court would have relieved had the transaction been a recent one. The decision of the master of the Rolls was affirmed on appeal : 1 Jac. R. 631.

Laches and neglect are always to be discountenanced in equity. A party must not sleep upon his rights here any more than at law. He must use all reasonable diligence to assert his claim or the court will not help him. This principle is found in a great variety of cases: *Smith* v. *Clay*, 3 Bro. C. C. 639, n ; *Jones* v. *Tuberville*, 2 Ves. Jr. 11 ; *Hercy* v. *Dinwoody*, Ib. 87 ; *Campbell* v. *Walker*, 5 Ib. 678 ; and it is more particularly applicable to stale demands brought forward and attempted to be supported for the first time after the death of the original party to the transaction.

But it is said that Mr. and Mrs. Powell remained many years ignorant of the facts which have since been discovered and which now show that Murray and Clark acted with a fraudulent design in obtaining the property discharged of the lien of the two thousand pounds, with a view of selling the same and benefitting by an investment of the money and

that they have succeeded in making a large profit for which, as trustees, they are liable to account.

I think, however, they did not stand exactly in the light of trustees. They were residuary devisees of this specific portion of the estate and, together with Robins, were executors of the will. As such devisees, they were entitled to all the benefit of the property over and above the legacy charged upon it; and the relation in which they stood to the property and to Mrs. Powell did not forbid their becoming purchasers of her interest. The objection, on this ground, is not valid; and even if, after they had sold the property and realized a sum exceeding two thousand pounds, they advanced to Robins only fifteen hundred pounds while they took his mortgage for two thousand, with interest at four and an half per cent., so as to produce the annuity of four hundred dollars and, by that means, gained five hundred pounds which they have since had the use of, I do not well perceive how it necessarily follows that Mrs. Powell can claim from them the interest of the five hundred pounds by way of making up the amount which she had agreed to relinquish. I am inclined to think the letter from Murray to Mrs. Powell of September 4th 1826, gives a true account of their placing in Robins' hands fifteen hundred pounds of the money and no more, requiring him to secure and repay the whole sum of two thousand pounds at Mrs. Powell's death with interest in the mean time at four and an half per cent., nominally, but which was, in fact, six per cent. on the sum actually advanced. They may have found him willing to take the money on those terms; and it can hardly be supposed they would have been willing to lend the whole two thousand pounds sterling at an interest so far below the legal rate as the face of the mortgage shows. The oppressive nature of the bargain with Robins, if it was such, is not evidence of any fraudulent design, on their part, towards Mrs. Powell in their previous arrangement with her. Whether there were any statute at that time in force in Massachusetts against usury, which would have jeopardized the loan to Robins or avoided the security, does not appear; but if so, they, as executors, must have answered for the

principal sum of two thousand pounds sterling in their own persons and estate.

The knowledge or concealment of the circumstances of that transaction appears to me not to vary, in any respect, the rights of the parties. Whether it was for the first time made known by the letter of Murray to Mrs. Powell in the year one thousand eight hundred and twenty-six or was verbally communicated in the conversation alluded to in the same letter in one thousand eight hundred and sixteen seems not very material. I consider the effect of the delay or lapse of time upon the claim set up in opposition to the deed is not obviated by any thing appearing in the case and, consequently, that Mrs. Powell is not entitled to an account of any arrears of interest on the two thousand pounds sterling, being the difference between that and the annuity which has been paid to her.

However, the bill is not to be dismissed. It is conceded that the money remains in the estate of Mr. Murray, not set apart or invested in any specific securities; and it is right and proper it should be securely invested so as to produce Mrs. Powell's annuity in future and, at her death, the capital to be divided and paid over to her children and the surplus income, if any in the mean time, to go to the representatives of Murray towards satisfying the outstanding bond in Boston against his estate.

A decree may be made accordingly; but the complainants are not entitled to costs—neither, under the circumstances, ought they to pay costs to the defendants the Murrays. As to the defendants, the executors of Clark's estate, the bill must be dismissed with costs, although, from the frame of the bill, and the nature of the claim made by it, they were deemed necessary parties. If it had been confined to the investment of the capital, they would have been unnecessary parties; but as the bill sought to recover arrears of interest in which they have failed, the complainants must pay costs to these executors.