(59 App. Div. 503.)

## WOODBRIDGE v. BOCKES.

(Supreme Court, Appellate Division, Fourth Department. March 12, 1901.)

1. TRUSTS—ELIGIBILITY OF BENEFICIARY AS TRUSTEE.
   Where a will provides that a certain person shall be the sole beneficiary for life of a trust, with remainder over, such beneficiary should not afterwards be appointed as sole trustee.

2. SAME—LIABILITY OF TRUSTEE.
   Where the beneficiary under a trust is appointed sole trustee, she is liable for estate funds and property received to her own use.

3. SAME—VALIDITY OF APPOINTMENT—WHO CAN QUESTION.
   Where a beneficiary for life of a trust is appointed as trustee on the request of the remainder-man and the original trustee, the latter cannot question the validity of such appointment.

4. SAME—COLLATERAL ATTACK.
   The validity of the appointment of a beneficiary for life of a trust as sole trustee, after a relinquishment by the trustee appointed under the will creating the trust, cannot be collaterally attacked.

5. SAME—WILLS—INSTRUCTION—INTEREST OF BENEFICIARY.
   Under 1 Rev. St. pt. 2, c. 1, tit. 2, § 63, prohibiting the beneficiary of a trust for the rents and profits of land from assigning or disposing of

69 N.Y.S.—27

such interest, a provision in a will creating a trust in. rents and profits
of real estate, and constituting. a certain person sole beneficiary for life,
with power to dispose of one-half of the trust property by will, does not.
vest a moiety in the beneficiary, or enable her to use or transfer the cor-
pus during life.

6. TRUSTS—IMPLIED TRUST—RIGHTS OF REMAINDER-MEN.
Where a trust is created in real property to pay a certain portion of
the income to the beneficiary for life, and remainder over in fee, there
is an implied trust in favor of the remainder-men, which requires the
trustee to preserve the corpus and surplus income of the trust property
for their benefit.

7. SAME—DEVASTAVIT—ACTION BY TRUSTEE. .
A will created a trust in testator's property, and required a portion of
the income to be paid to testator's daughter during her life, and the sur-
plus and remainder to pass in fee to her children, or grandchildren in the
absence of children, or to revert to testator's estate. The trustee turned
the management of the property over to the husband of the daughter
under a power of attorney ratified by her, and 17 years later she and
her children, who were then of age, released the trustee from all liability,
and all the trust property was transferred to the children. Thereafter
the daughter was appointed trustee, and received all the property, which
had greatly depreciated through the management of the husband; and
eight years after the execution of the release she brought action against
the original trustee for a devastavit. *Held*, that she could not maintain
such action in order to recover the estate for her children, though the
conduct of the trustee was unauthorized; and 1 Rev. St. p. 730, c. 1, pt.
2, tit. 2, § 65, provides that, where a trust is expressed in the instrument
creating it, every act, conveyance, etc., in contravention of the trust shall
be void, since the release by the children is binding on them for the pur-
pose of suit, though they are not parties thereto.

8. SAME.
The daughter cannot recover as substituted trustee on the ground that
there are contingent remainder-men entitled to the property in case she
survives her children, but the protection of such rights will be postponed
until the happening of the contingency.

9. SAME.
The daughter cannot maintain such action as trustee to recover an ac-
crued income payable to her, since such income vests in her as bene-
ficiary, and not as trustee.

10. SAME.
The release of the daughter to the. trustee was binding as to her income,
which had accrued at the time of its execution, though 1 Rev. St. p. 730,
c. 1, pt. 2, tit. 2, § 65, provides that no person beneficially interested in a
trust for the receipt of the rents and profits of land can assign, or in any
manner dispose of, such interest, since the latter only applies to profits
to accrue in the future.

11. SAME.  ᵥ
The daughter cannot maintain such action for the purpose of protect-.
ing her future income from the trust estate without first returning or
tendering the estate property received by her to the trustee.

12. SAME—ESTOPPEL.
Where a cestui que trust induces the trustee to allow her husband to
manage the trust property, and finally induces him to transfer the prop-
erty to her, and she executes an instrument releasing the trustee from
all liability, and continues in possession of the property for a long period
of years, she is estopped from maintaining an action for a devastavit,
though his act was in contravention of the trust.

Appeal from special term, Saratoga county.

Suit by Helen F. Woodbridge, as substituted trustee under the last
will of Samuel Freeman, deceased, against Augustus Bockes. From

a judgment dismissing the complaint, plaintiff appeals. Modified and affirmed.

This is a suit in equity to obtain an accounting by defendant as trustee under the will of Samuel Freeman, deceased. The will was executed on the 17th day of May, 1870, and, after bequeathing certain legacies and annuities, it provided as follows: "All the rest, residue, and remainder of my property, estate, and effects of every name, nature, and description, and wheresoever situated, I do give and devise to the executor hereof, and hereinafter named, and to his successor, in trust, however, and to and for the following uses and purposes, to wit: To receive the rents, profits, and annual avails thereof, and to apply them to the use of my only daughter, Mrs. Helen Woodbridge, wife of the Rev. John Woodbridge, during her natural life, not, however, to exceed in the aggregate the annual sum of three thousand five hundred dollars; intending that such rents, profits, and avails to and not exceeding the aforesaid annual amounts of the three thousand five hundred dollars shall be given and paid over to my said daughter annually, in semiannual payments, as her own separate property, to be expended and used by her according to her own wishes. And, secondly, on the decease of my said daughter the trust fund and property to go and belong to her child, or children, if more than one, in equal parts, the same in all respects as if she had been the absolute owner thereof in her own right, and had died intestate and unmarried; and, in case my said daughter shall die leaving no child or descendant of any child her surviving, then, and in that case, said trust fund and property to go and belong to my next of kin and heirs at law, the same in all respects as if I had died intestate holding and owning the same. But it is my will and purpose, and I so here declare and direct, that my said daughter, if she so desire, shall be at liberty by a last will and testament duly executed by her, to give and bequeath from said trust fund and property a sum and amount not exceeding one-half of such trust fund and property to whomsoever she may choose, and as she may choose; and the above provisions of my said will are to be deemed qualified in so far as may be necessary by this right and privilege given and extended to my said daughter." The will then appointed defendant executor and trustee on condition that he should accept the trust at an annual compensation of $500, without further charge for services, commissions, or expenses; and in the event of his declining to accept, or in case of his decease, or inability to act for any reason, it provided for the appointment of an executor or trustee by the supreme court, or a justice thereof, who should fix and approve the security to be given on such appointment. The trustee was expressly authorized in his discretion, with the consent in writing of testator's daughter, to sell and convey the real property held by him in trust, or any part thereof. The testator died on the 19th day of December, 1870. His will was admitted to probate on the 24th day of December, 1870, and letters testamentary were on that day issued to defendant, who thereupon entered upon the discharge of his duties as executor and trustee. The trust estate under the residuary clause of the will hereinbefore quoted consisted of real property not exceeding $10,000 in value, and personal property of the value of about $100,000. The daughter of testator survived him. She was his only child, and at that time had two infant children,—Freeman, born June 2, 1866, and Helen F., born December 17, 1867, —both of whom are still living, and they are her only issue. Testator's said granddaughter, Helen F. Woodbridge, subsequently married, and has one child, born after the commencement of this action. Plaintiff married the Reverend Dr. John Woodbridge in 1861. The testator resided at the village of Saratoga Springs, and at the time of his death plaintiff's husband was a minister of the Presbyterian church at that place. An order of reference was granted on the application of both parties "to hear the evidence on the accounting herein which may be produced by either party, and to report the same to this court, with his findings and opinion thereon." The referee reported findings of fact, together with his opinion thereon, recommending the dismissal of the complaint. On a motion to confirm the report the court made findings of fact and conclusions of law. Both the referee and court found that defendant, after letters testamentary were issued to him, made and filed a full

and complete inventory of the estate with the surrogate, and then allowed plaintiff's husband to retain the securities and manage the estate, under her sanction, by oral authority, until June 28, 1872, during which time plaintiff received from defendant her income for one year, and all the debts and specific legacies were paid. On the last-named date a formal power of attorney under seal was executed by defendant to plaintiff's husband, constituting the latter the true and lawful·agent and attorney of the former as executor and trustee to take possession of all the trust property, and to use, manage, and control the same, to collect all moneys due, to settle and adjust claims, and to do and perform all things necessary in that regard as fully as defendant might or could do if personally present, and giving unto plaintiff's husband full power of substitution and revocation, and ratifying and confirming all that he might lawfully do or cause to be done, and reciting that such power of attorney was given and executed with the sanction, ratification, and approval of plaintiff, and that her husband was to be deemed her agent and attorney in all matters and things done and to be done and performed thereunder; and reference was therein made to plaintiff's written sanction and authority to that effect thereunder written. Following the power of attorney was a writing, executed under the hand and seal of plaintiff in the presence of a witness, reciting that she ratified and approved the appointment of her husband made by said power of attorney, and that he was also to be deemed her agent and attorney in all matters and things done and to be done and performed thereunder. Down to that time defendant had deposited all trust funds to his account as trustee in a local bank, and on that day such account was closed, and the balance to his credit as such trustee was deposited to the individual credit of plaintiff, and thereafter the account was kept in her name until December 19, 1874, from which time down to the appointment of plaintiff as trustee the account was kept in the name of her husband. The referee and court also found that from the time of the execution of said power of attorney the business of the estate was conducted by plaintiff's husband under and pursuant to said authority, with her knowledge and approval, until the 12th day of September, 1889, on which day plaintiff and her two children, then of age, executed and delivered to defendant a release under seal, signed in the presence of a subscribing witness, who proved its execution, as follows: "Whereas, in and by the last will and testament of Doct. Samuel Freeman, deceased, admitted to probate in Saratoga county, N. Y., Augustus Bockes was named as executor and trustee, and letters testamentary issued to him thereon; and whereas, the Rev. John Woodbridge, son-in-law of said deceased, took the agency of the estate of said deceased under said executor and trustee, and has had the entire conduct and management thereof, both real and personal, by and with the consent and approval of the undersigned, which conduct, management, consent, and approval is hereby in all respects ratified and confirmed by us and each of us respectively, said Bockes having never taken or in fact received anything whatever from or belonging to said estate, or from its said conduct or management; and whereas, said Bockes has made disposition by formal transfer pursuant to and in accordance with our and each of our request and direction, with all which we, the undersigned, declare ourselves satisfied, and hereby ratify and confirm the same in all respects: Now, therefore, in consideration of the premises, and for value received, we, and each of us, hereby release, acquit, and discharge said Bockes from any and all claim, demand, and liability by reason of said executorship and trusteeship growing or hereafter to grow, arise, or to be made upon or against him because of the same, or of the issuing to him of said letters testamentary, or of his formal or other acceptance of the same; and do hereby covenant and agree to save him harmless and indemnified from and against any and all claim, demand, and liability aforesaid of every name, nature, and description whatsoever, by whomsoever made or asserted." Concurrently with the execution of this release, defendant as trustee, and plaintiff individually, joined in the execution of a deed conveying all the real estate included in the trust or acquired with trust funds to plaintiff's said children, who subsequently, and on May 16, 1890, conveyed the same to plaintiff individually; and defendant, as such trustee, assigned to plaintiff individually several long-term leases and a large amount of bank

stock, the only personal property requiring a formal assignment. Plaintiff subsequently surrendered this stock to the bank, and obtained a new certificate in her name individually therefor. The court and referee also found that this release and said power of attorney were executed voluntarily and freely, with full knowledge of all the facts, and without fraud, actual or constructive, or misrepresentation on the part of the defendant; that plaintiff, or her husband as her agent and attorney, had had possession and control of the personal property of the estate virtually since testator's death, and actually since the execution of said power of attorney; that defendant has satisfactorily shown that at the time of the trial there was no portion of the estate, real or personal, in his hands, or in the hands of plaintiff's husband, but that the whole thereof now remaining was in the hands of plaintiff; that defendant has not at any time taken, accepted, or retained to his own use any property, funds, or money belonging to the estate; that since said 12th day of December, 1889, plaintiff has managed the trust estate exclusively, and defendant has taken no part therein; that all of the papers relating to the trust have been in the hands of plaintiff or her husband since 1872, and in her possession exclusively since her appointment as trustee; that defendant has accounted for the property of said estate as well as the nature of the case will admit; that plaintiff is now vested with the title to all property and effects of said estate, and has possession and control thereof; that in 1872 plaintiff's husband, with her knowledge, acquiescence, and approval, used $50,000 of the trust funds in the purchase of a tract of 26 acres of land within the corporate limits of New Brunswick, N. J., as a family residence, and that plaintiff and her husband and children and his children by a former marriage have ever since and until within the last three years resided upon said premises, living in extravagant style, and in excess of the income from said trust property, and that in this manner plaintiff has largely overdrawn her annuity of $3,500 per annum, and there is nothing due or owing from defendant or from the trust estate to her on account thereof; that the title to said New Brunswick property was originally taken in the name of plaintiff and her husband as joint tenants, but her husband subsequently deeded his interest therein to her, and the legal title is now in her name, and she, with part of her family, still resides on said premises; that, if there has been any waste or misappropriation of the trust funds, it has been caused, permitted, and sanctioned by plaintiff in her own use and enjoyment thereof; that, if any deficit exists in the funds of said estate, the same has been caused and brought about by plaintiff, or by and through her acquiescence, approval, and participation, and is principally represented by said indebtedness of $50,000 and interest thereon, owing by her to the estate for the trust funds used in the New Brunswick purchase; that, if plaintiff would account and pay over to the estate the funds which she has appropriated or participated in appropriating to her own use, and her indebtedness to said estate on account of said New Brunswick purchase, this would fully meet and answer any and all alleged deficit or devastavit charged or claimed to exist herein. By a will executed November 20, 1871, she gave to her husband her separate estate and the income for his life of that part of the trust estate which she was authorized to bequeath and devise, and on the 18th day of November, 1872, by a codicil, she provided for payment of the indebtedness of herself and husband to the estate on account of the New Jersey purchase out of the principal of said part of the trust property, and for the payment of his indebtedness thereto for moneys, funds, or property received as agent of the trustees or otherwise out of the income of said part of the trust property.

It clearly appears that at least since 1872 defendant did not take any active part in the management of the estate, and that he merely signed such papers as were necessary to carry into effect the contracts made by the plaintiff's husband. On the 9th day of June, 1894, plaintiff's children and defendant joined in a petition to the supreme court showing that the latter had entered upon his duties as executor and trustee, and had so continued without having been removed or having resigned, and praying that his resignation be accepted; and plaintiff's son and daughter therein prayed that their mother be designated as substituted trustee. The court made an order accepting the resignation and appointing plaintiff, without requiring her to give security.

The order, which was drafted on the assumption that defendant had joined in the prayer for such appointment as well as for his resignation, directed defendant "to transfer and deliver over the property in his hands belonging to said trust" to plaintiff as his successor: These papers were prepared and the proceeding was conducted by plaintiff's attorneys. The petition did not set forth that the management and control of the property had been thus left to plaintiff's husband, and the order is silent on the question as to whether an accounting was necessary or required. It is conceded that defendant never accounted as executor or trustee, and that his accounts as such were never judicially passed upon by either court. Plaintiff never made any demand on defendant for the payment of her annuity, and never complained of his turning over the management of the estate to her husband, or in any manner attempted to revoke the power of attorney or repudiate the release or transfer of property to her until May 3, 1897, when, after having separated from her husband, she served a written demand for the delivery of the trust property to her, and commenced this action a week later. It does not appear that plaintiff's children have taken any steps to revoke or cancel the release executed by them, and they are not parties to this suit. In addition to the loss of income owing to the New Jersey purchase, the evidence indicates that by loans and investments made by plaintiff's husband the estate has sustained a loss of a few thousand dollars, the exact amount not having been definitely shown or found. Defendant never saw or communicated personally with plaintiff, or had any direct communication from her, concerning the management of the estate, or any of the matters in controversy. It appears that all the documents executed by them or either of them were presented by plaintiff's husband. The plaintiff says that he told her that the power of attorney was a paper authorizing him to draw her income, and as to the will she says that she was seriously ill at the time of its execution, and her husband stated that he desired its execution, as there might be some loss to the estate from investments, and he thought the defendant ought not to be responsible. As to the other papers, plaintiff and her children testified that her husband, on presenting them for execution, said that they related to the estate, and that defendant wanted them executed; and that they, having implicit confidence in the husband and father, always signed without reading or knowing the contents. While admitting knowledge that plaintiff's husband was managing the estate very largely, they testified that they supposed it was under the defendant's advice as to all things, and as his agent. Their testimony in this regard, while not expressly controverted by plaintiff's husband or by any witness, is satisfactorily controverted by the documents themselves, and the history of the manner in which the family lived. Some months prior to the commencement of this action plaintiff employed attorneys and executed a deed to defendant, as trustee, of all the trust realty held by her; but there was no satisfactory evidence of a tender of delivery of such deed to defendant, or of a transfer or tender of delivery of the personal property. The findings of fact by the court, so far as material, are amply sustained by the evidence.

The special term decided: (1) That plaintiff holds charged with the trust all trust property and property purchased with trust funds; (2) that she must account for all funds taken by her authority, or with her sanction and approval, before she can maintain this action; (3) that the release was binding on plaintiff and her children, and is a bar to this action; (4) that defendant held the life estate in trust, and his relation to plaintiff's children and testator's next of kin is that of life tenant and remainder-men, not trustee and cestui que trust; (5) that, as plaintiff has received more than her income can possibly amount to, and is indebted to the estate, she, representing herself, has no cause of action; (6) that, as plaintiff is not trustee for the remaindermen, or charged with any active duty in their behalf, and no cause of action in their favor could exist until her death, she could not, even if there had been no release, maintain the action for their benefit, and for like reason she cannot maintain it for the contingent remaindermen; and (7) that the complaint should be dismissed upon the merits, with costs. One justice of the appellate division in the Third department was disqualified, and, the majority of the others being unable to concur in a decision, the appeal was transferred here.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WIL-
LIAMS, and LAUGHLIN, JJ.

Appleton D. Palmer, for appellant.
John L. Henning, for respondent.

LAUGHLIN, J.   The appointment of plaintiff as sole trustee was
incompatible with her position as cestui que trust.   Losey v. Stan-
ley, 147 N. Y. 560–568, 42 N. E. 8.   She was and is individually liable
to the estate for funds and property had and received to her own use,
and probably for unwarranted investments made by herself and her
husband.   Earle v. Earle, 93 N. Y. 104;  Perry v. Foster, 62 How.
Prac. 228–232;  Booth v. Booth, 1 Beav. 125;  Chillingworth v. Cham-
bers [1896] 1 Ch. 685–707.   It appears to us, therefore, that the sole
beneficiary of the express trust should not have been made the trus-
tee, and given possession of the trust funds and property;  but, she
having been appointed on the application of the remainder-men and
defendant, and he having been directed to deliver over to her the
trust funds and property, he cannot question the validity of her ap-
pointment on this ground, nor may it be questioned collaterally.
First Nat. Bank v. National Broadway Bank, 156 N. Y. 459–472, 51
N. E. 398, 42 L. R. A. 139;. People v. Donohue, 70 Hun, 317–324, 24
N. Y. Supp. 437;  Mulry v. Mulry, 89 Hun, 531, 35 N. Y. Supp. 618.
It will be important to have in mind, in proceeding to a consideration
of the many difficult points of law presented by this appeal, the exact
interest of the several parties in this estate.   The plaintiff has no le-
gal estate.   She is merely the cestui que trust of her trustee, and
entitled to receive during life from the trustee, semiannually, the in-
come, rents, and profits, not exceeding $3,500 per annum.   Stevens
v. Melcher, 152 N. Y. 551–567, 46 N. E. 965.   The trust estate is vest-
ed in the trustee not absolutely, but for the purpose of the trust, and
with the remainder over to plaintiff's two children, whose vested fu-
ture estate is subject to be devested by their death prior to that of
their mother, in which case it will go to their children, if any, and
otherwise to testator's next of kin.   In re Brown, 154 N. Y. 313, 48
N. E. 537;  Campbell v. Stokes, 142 N. Y. 30, 36 N. E. 811.   The pow-
er to dispose of one-half of the trust property by will relates to the
remainder only, and it does not vest a moiety in the cestui que trust,
or empower her to use or transfer any part of the corpus during life.
The provisions of the Revised Statutes that, where an absolute power
of disposition, not accompanied by any trust, is given to the owner of
a particular estate for life or for years, such estate shall be changed
into a fee, and that, where a general and beneficial power to devise
the inheritance shall be given to a tenant for life or for years, such
tenant shall be deemed to possess an absolute power of disposition,
do not apply to a beneficiary of rents and profits, who, by section 63,
tit. 2, c. 1, pt. 2, p. 730, 1 Rev. St., providing that "no person benefi-
cially interested in a trust for the receipt of the rents and profits of
land can assign or in any manner dispose of such interest, but the
rights and interests of every person for whose benefit a trust for the
payment of a sum in gross is created are assignable," is precluded

from alienating his future income. Sections 81, 84, tit. 2, pt. 2, c. 1, pp. 732, 733, 1 Rev. St.; Hume v. Randall, 141 N. Y. 499–505, 36 N. E. 402; Crooke v. Kings Co., 97 N. Y. 435; Genet v. Hunt, 113 N. Y. 169, 170, 21 N. E. 91; Cutting v. Cutting, 86 N. Y. 522; Livingston v. Murray, 68 N. Y. 491, 492. It was the express duty of defendant to the beneficiary to preserve the corpus of the estate, and by judicious investments thereof produce an income, if practicable, equal to her annuity; and, although he was not an express trustee for the remainder-men, the law implies a trust in their favor, making it incumbent upon him to preserve the principal and surplus income, and account to them therefor at the expiration of the trust. Pom. Eq. Jur. (2d Ed.) §§ 1065–1067; Chaplin, Exp. Trusts & Powers, §§ 237–246; Stevens v. Melcher, 152 N. Y. 551–567, 46 N. E. 965; Cochrane v. Schell, 140 N. Y. 516–527, 35 N. E. 971; Gilman v. Reddington, 24 N. Y. 9; Sherman v. Parish, 53 N. Y. 484–493. Here the trust is expressed in the will. The statute relating to the powers and duties of a trustee of an express trust provides that, "where the trust shall be expressed in the instrument creating the estate, every sale, conveyance or other act of the trustee in contravention of the trust, shall be absolutely void." Section 65, tit. 2, pt. 2, c. 1, p. 730, 1 Rev. St. As against this plaintiff individually and her children, upon the facts stated, the equities are all with defendant. While, although acting in entire good faith, he was guilty of a breach of trust in thus transferring the custody and management of the trust funds to plaintiff's husband, it was intended for her benefit and that of her children, the presumptive remainder-men, whom she was bringing up, to afford a more full and complete enjoyment of the property by the family, and to save the estate the annual expense of $500 for commissions to defendant. Presumably, there would have been no breach of trust on the part of defendant had not plaintiff, as an inducement, expressly acquiesced in the power of attorney, and constituted her husband her agent as well. It was doubtless known to all originally that the arrangement would not be binding on the remainder-men. The purpose of the codicil to plaintiff's will was to protect defendant against the claims of the remainder-men. The plaintiff, her husband, and defendant all took chances in this regard, undoubtedly believing, expecting, and trusting that the remainder-men, the children, who would naturally participate in the benefits of the breach of trust by enjoying greater home comforts, better social advantages, and a more liberal education, upon coming of age would ratify their acts, as has been done by the release executed to defendant. The principal breaches of the trust occurred, and a cause of action in favor of plaintiff individually, if she had one at all, accrued 25 years before the commencement of this action. Miller v. Parkhurst, 9 N. Y. St. Rep. 759–765. The plaintiff, at least, has been fully aware, during this whole period, of all the material facts. She not only originally induced defendant's parting with that part of the trust property concerning which a devastavit is alleged, but 17 years later she formally released him from all liability in consequence of such breach of trust, and for 8 years thereafter she had the exclusive possession of all the remaining trust funds, and the title thereto, and to the real property as well; and

she consented to his resigning without accounting. It was not until after she had been trustee for 3 years, and until more than 25 years had elapsed since the substantial breach of the trust took place with her consent, and until defendant was manifestly unable to intelligently account, having turned the papers and vouchers, part of which have been lost, over to her husband, who in turn delivered them to her, and until defendant had lost all remedies against her husband and his transferees for redress in a restoration of the property, that she first complained to defendant, and now asks a court of equity to require defendant, under pain of punishment for contempt, to account to her for the property, which he, while keeping it safely a quarter of a century ago, was induced by her to deliver to her husband, and of which she and her husband and family have had the exclusive use and enjoyment since. The rule holding trustees to a strict accountability for the due and full execution of their trusts must not be relaxed. But, if plaintiff were awarded the relief prayed for, that would be permitting her to perpetrate a fraud on defendant, to take advantage of her own wrong, and a violation of the maxim, "Volenti non fit injuria." It must be borne in mind that this is a suit in equity, where the hard, harsh rules of law are not rigidly enforced and the court need not make an unjust decree. Bruen v. Hone, 2 Barb. 586, 587; Stevens v. Melcher, 152 N. Y. 551–583, 46 N. E. 965. It was competent for the presumptive remainder-men to release defendant, and, while they are not parties to the suit, and will not be bound by the decision, the release is presumptively binding upon them. In re Brennan, 21 App. Div. 236–240, 47 N. Y. Supp. 661. There is, therefore, no propriety in requiring defendant to restore the trust estate for them, because, for the purposes of this case, at least, it appears that they have released him. The probabilities are that her children, the remainder-men who have released defendant, will survive plaintiff, and be the only parties interested in the remainder. However, there being a possibility that their children or testator's next of kin, the contingent remainder-men, may take, the question arises, should, under the extraordinary circumstances of this case, the court compel a restoration of the fund for that contingency? Assuming, without deciding the question, that the trustee may maintain a suit for devastavit for the benefit of remainder-men, we think that as to these contingent remainder-men, in view of the great hardship and injustice that would result to defendant, and considering also that plaintiff, if not wholly liable, is jointly liable with defendant to such remainder-men, it is proper for the court to withhold such relief, and to leave it to such contingent remainder-men, should they ever take a vested interest, to redress the wrong for themselves. Stevens v. Melcher, 53 Hun, 636, 6 N. Y. Supp. 811; Parks v. Parks, 9 Paige, 107–123; Wead v. Cantwell, 36 Hun, 528; Ward v. Ward, 16 Abb. N. C. 253; In re Hammersley's Estate, 9 Civ. Proc. R. 293.

This brings us to the final question,—whether the action may be maintained for the benefit of the cestui que trust. It would have been better practice if the action had been brought by the beneficiary individually as well as trustee, and if the remainder-men had been made parties. Wood v. Brown, 34 N. Y. 337; Vetterlein v. Barnes,

124 U. S. 169, 8 Sup. Ct. 441, 31 L. Ed. 400; Sherman v. Parish, 53 N. Y. 483; Sears v. Hardy, 120 Mass. 524. But the issues raised by the pleadings, litigated and decided, involve her rights individually, and the decision is binding upon her in each capacity. Sanders v. Soutter, 126 N. Y. 193, 27 N. E. 263; Black, Judgm. § 536. It may be that the cestui que trust could not, in view of the statute quoted, release her future income; but there can be no doubt that the release is effectual to bar any right of action for accrued income. In re Taggard (Sup.) 16 N. Y. Supp. 629, affirmed in 138 N. Y. 610, 33 N. E. 1082. The public policy declared by the statute is against allowing the beneficiary of rents and profits to anticipate the income is the same as that which makes assignments of the salaries of public officials in advance of their becoming payable void, but not so as to accrued salaries. Sherman v. Parish, 53 N. Y. 483; Tolles v. Wood, 99 N. Y. 616, 1 N. E. 251; Young v. Purdy, 4 Dem. Sur. 455; In re Valentine's Estate, 5 Misc. Rep. 479–483, 26 N. Y. Supp. 716; In re Worthington, 141 N. Y. 9, 35 N. E. 929, 23 L. R. A. 97; Bliss v. Lawrence, 58 N. Y. 442–448; Thurston v. Fairman, 9 Hun, 584. The right of action for accrued income vests in the beneficiary alone, and the trustee, therefore, cannot maintain an action for an accounting therefor. People v. Donohue, 70 Hun, 317, 24 N. Y. Supp. 437. The question is thus narrowed to whether the accounting may be required for the sole purpose of requiring defendant to restore the trust fund and property in order that plaintiff may receive her semiannual annuities in the future. It may be observed that it is difficult to see how defendant could be compelled to make an accounting, if he were otherwise liable, without the plaintiff first restoring to him, or tendering restoration of, the personal property that has come into her hands, or herself accounting therefor, and delivering to him the papers and vouchers belonging to the estate. Davison v. Tarns, 30 Misc. Rep. 159, 63 N. Y. Supp. 828.

We come now to the consideration of the application of the doctrine of estoppel and laches. In Walker v. Symonds, 3 Swanst. 1–64, the following principles of law previously laid down by Lord Eldon were quoted with approval, to wit:

"It is established by all the cases that, if the cestui que trust joins with the trustees in that which is a breach of trust, knowing the circumstances, such cestui que trust can never complain of such a breach of trust. I go further, and agree that either concurrence in the act or acquiescence without the original concurrence will release the trustees; but that is only a general rule, and the court must inquire into the circumstances which induced concurrence or acquiescence; recollecting in the conduct of that inquiry how important it is on the one hand to secure the property of the cestui que trust, and on the other not to deter men from undertaking trusts, from the performance of which they seldom obtain either satisfaction or gratitude." Page 64.

A case similar to the one at bar is that of Nail v. Punter, 5 Sim. 555. Stock was settled on a wife for her separate use for life, with a power of appointment by will. The trustees, at the request of the husband and wife, sold out the stock, and paid the proceeds to her husband, who afterwards became bankrupt. The wife filed a bill to compel the trustees to replace the stock, and obtained a decree, under which the trustees transferred part of the stock into court, and they were

allowed time to transfer the remainder. The wife died, having, by her will, appointed the stock to her husband, and appointed him her executor. He filed a bill of revivor and supplement against the trustees and his assignees, claiming the stock under the appointment, and praying the same relief as his wife might have had. But the court dismissed the bill, and sustained the defense that "it would be contrary to plain justice that he who has had the money once should have it a second time."

In Booth v. Booth, 1 Beav. 125, the court said:

"I am of opinion, on the authorities and on the established rules of the court to which it is not necessary to refer, that a trustee who stands by and sees a breach of trust committed by his co-trustee, becomes responsible for that breach of trust. That the widow concurred seems to be quite clear, and any interest to which she may be entitled is the proper fund to resort to in the first instance. If she has obtained any benefit from the breach of trust, the trustee ought to be compensated in respect of it. I must, therefore, declare that the property ought to have been realized on the death of the testator; and that Batkin and Booth are liable for any loss which has occurred from not winding up the testator's affairs at that time."

In Brice v. Stokes, 11 Ves. 319, it was held that:

"It is clear, upon settled cases, that, if there are two trustees, and a transaction takes place in which the fund is taken out of the state in which it ought to have remained, and is not placed in the state in which it ought to be, but is kept in hands that ought not to retain it, if any particular cestui que trust has acted in authorizing that as much as the trustee, who has not the money in his hands, and continues to permit it to be so treated, in a question between that cestui que trust and that trustee the latter cannot be called upon by the former."

In White v. White, 5 Ves. 554, the court said:

"But if a trustee, with the consent of a cestui que trust, does an act for his benefit, he is bound by it."

In Griffiths v. Porter, 25 Beav. 241, the court said:

"It has been justly observed that the court will not visit a trustee with the consequences of a breach of trust committed with the sanction or by the desire of the cestui que trust, or of one committed without the sanction or desire of the cestui que trust, if, when it comes to his knowledge, he has acquiesced, and obtained the benefit of it for a long period."

In the late case of Chillingworth v. Chambers [1896] 1 Ch. 685–707, the following principles applicable to cases of this character were announced:

"There appear to be three rules which have application to a case like the present, and may be shortly stated as follows: (1) That a cestui que trust cannot make a trustee liable for losses occasioned to him by a breach of trust which that cestui que trust has authorized and consented to; (2) that in such a case a trustee is entitled to be recouped out of the interest of the cestui que trust in the trust funds any loss he may sustain by reason of his having to make good such breach of trust; and (3) that, as between two trustees who are in pari delicto, the one who has made good a loss occasioned by a breach of trust for which the two are jointly and severally liable may obtain contribution to that loss from the other."

In Butterfield v. Cowing, 112 N. Y. 486, 20 N. E. 369, the principle of these cases was declared, the court saying:

"It is quite clear that no cestui que trust can allege that to be a breach of trust which has been done under his own sanction, whether by previous consent or subsequent ratification. The general rule is that either concurrence

in the act or acquiescence without original concurrence will release the trustee."

These rules and principles, stated quite as broadly as declared by the English courts, are firmly established in our equity jurisprudence, as shown by numerous decisions of the court of last resort. In re Washborn's Estate (Sup.) 14 N. Y. Supp. 672; Sherman v. Parish, 53 N. Y. 483; Earle v. Earle, 93 N. Y. 104; In re Niles, 113 N. Y. 547, 21 N. E. 687; In re Hall, 164 N. Y. 196, 58 N. E. 11; Boerum v. Schenck, 41 N. Y. 182; Bank v. Burt, 93 N. Y. 246; Lewin, Trusts, 773, 774. The application of these principles to the particular facts of this case is not, we think, in conflict with the authorities holding that such a trust may not be abrogated (Douglas v. Cruger, 80 N. Y. 15; Oviatt v. Hopkins, 20 App. Div. 168, 46 N. Y. Supp. 959); that the beneficiaries' interest is not assignable (Graff v. Bonnett, 31 N. Y. 12; Bull v. Odell, 19 App. Div. 605, 46 N. Y. Supp. 306; Cochrane v. Schell, 140 N. Y. 516–534, 35 N. E. 971); and that, as against parties who are not innocent purchasers, a beneficiary or trustee may disaffirm an act in contravention of the trust, and recover the property (Sherman v. Parish, 53 N. Y. 484; Wetmore v. Porter, 92 N. Y. 76; First Nat. Bank v. National Broadway Bank, 156 N. Y. 459, 51 N. E. 398). The case of In re Brennan, 21 App. Div. 236, 47 N. Y. Supp. 661, is distinguishable on the facts. The question was whether a purchaser at a judicial sale should be required to take title where a trustee of an express trust, with the consent of the beneficiary of the rents and profits, conveyed the lands, without consideration, to the wife of the remainder-man. This was in contravention of the trust, and subject, as to purchasers with knowledge of the fact, to be rescinded by the trustee and beneficiary. While such proceedings are irregular, and not to be encouraged, yet in view of the laches the court will not aid a cestui que trust who has, by her own solicitation, received the benefit of the breach of trust in perpetrating a fraud on a trustee by requiring him after such a great lapse of time to make an accounting, and compelling him to restore the principal of the estate, the loss to which, if any, has occurred through her own mismanagement or that of her husband, but will rather hold her estopped by the power of attorney and her conduct, and bound by the release. In re Wagner's Estate, 119 N. Y. 28, 23 N. E. 200; Haviland v. Willets, 141 N. Y. 35, 35 N. E. 958; First Nat. Bank v. National Broadway Bank, 156 N. Y. 473, 51 N. E. 398; Moss v. Cohen, 158 N. Y. 240, 53 N. E. 8; Griffiths v. Porter, 25 Beav. 236–241; Powell v. Murray, 2 Edw. Ch. 636; Boyer v. East, 161 N. Y. 580–588, 56 N. E. 114; People v. Board of Education of City of New York, 158 N. Y. 125, 52 N. E. 722; Stevens v. Melcher, 152 N. Y. 551–553, 46 N. E. 965; Galway v. Railway Co., 128 N. Y. 132–146, 28 N. E. 479, 13 L. R. A. 788; Calhoun v. Millard, 121 N. Y. 69, 24 N. E. 27, 8 L. R. A. 248, note; In re Neilley, 95 N. Y. 385; Kent v. Mining Co., 78 N. Y. 169; In re Von Glahn, 53 App. Div. 164–167, 65 N. Y. Supp. 865; Johnstone v. O'Connor, 21 App. Div. 77–85, 47 N. Y. Supp. 425; Mott v. Trust Co., 29 Misc. Rep. 39, 60 N. Y. Supp. 357, affirmed in 52 App. Div. 623, 65 N. Y. Supp. 190; Bruen v. Hone, 2 Barb. 586; Lammer v. Stoddard, 103 N. Y. 672, 9 N. E. 328; Gilmore v. Ham, 142 N. Y. 1, 36 N. E. 826; In re Jones' Estate, 51

App. Div. 420, 64 N. Y. Supp. 667; Perry, Trusts, §§ 285, 850, 851, 869, 870; Wood, Lim. Act. (2d Ed.) § 58. These views lead to the conclusion that the judgment should be affirmed.

The defendant, although he acted in good faith, is not free from fault. This estate should not be further depleted by the payment of the additional allowance of $2,000, as directed by the special term. The order granting the extra allowance should be vacated, without costs, and the judgment modified accordingly, and, as so modified, affirmed, with costs. All concur.